SAMUEL S. STALEY, appellant,

*v.*

SOUTH JERSEY REALTY COMPANY, respondent.

[Submitted March 25th, 1914.    Decided June 15th, 1914.]

1. Contempts are of two sorts, civil and criminal; in a civil contempt the proceeding is a remedial step in a cause *inter partes* and if the contemnor be imprisoned, it is only until he performs some required act beneficial to the other party; criminal contempts are offences against organized society and are punishable as such in a proceeding at law which, while it may be administered by the court in which the contumacious conduct occurred, is no part of the private litigation therein.

2. A proceeding instituted in the court of chancery for the purpose of having that court adjudge whether or not the defendant in a cause pending therein was guilty of a contemptuous violation of · an injunction issued by it is a proceeding at law in a criminal contempt in which the defendant is entitled to all of the substantial rights of a person accused of crime that are consistent with the summary nature of the proceeding and the processes of the tribunal in which it is administered, one of which rights is that the incriminating testimony shall be given by witnesses subject to cross-examination and impeachment under the ordinary rules of evidence.

3. A punitive order of the court of chancery in such a proceeding made upon *ex parte* affidavits will be set aside.

4. *Ex parte* affidavits to which the rules of evidence are not applied are not juridical evidence and hence are incapable of supporting a judicial decision in a proceeding at law. *Quære:* Whether the defendant in a criminal contempt proceeding may expressly or by acquiescence waive his right to be convicted by the testimony of witnesses subject to his cross-examination.

---

On appeal from an order of the court of chancery advised by Vice-Chancellor Howell.

Two bills to quiet title were filed in the court of chancery against Samuel S. Staley and others, in one of which a final decree was entered on April 2d, 1909, and in the other of which a final decree was entered on October 22d, 1909; in each case a permanent injunction was awarded restraining Staley from disposing of or claiming the right to make title to certain lands referred to in the said decrees, respectively. On June 18th, 1910, upon proceedings for contempt for the violation of this injunctive provision of the earlier decree, Staley was adjudged guilty and ordered to pay a fine of $50 for the use of the state. On September 22d, 1910, an order in the other suit was made upon Staley requiring him to show cause why he should not be adjudged guilty of contempt of court for the violation of the permanent injunction awarded in that case. This order was returnable at the chancery chambers at Jersey City on October 3d, 1910, and was served on Staley personally. At the time and place designated in this order to show cause the vice-chancellor took up the consideration of the proceeding for contempt and has made, for the purposes of this appeal, the following written statement of what then occurred:

"An order to show cause was signed and served upon the respondent, Staley, who was then sojourning in Philadelphia. He did not appear at the hearing on the return day, but sent his counsel, who moved that a day might be fixed for taking the deposition of the respondent, who counsel represented desired to have a hearing in open court. He presented no answering affidavits. His counsel was inquired of as to whether Staley was in

court in response to the order to show cause, to which counsel
replied that he was not. His counsel stated that he was in
Philadelphia, where he lived. I then examined the petition, and
finding that the respondent, Staley, had been adjudged guilty of
contempt on a former action, and had been fined $50, inquired
of his counsel if the fine and costs had been paid, to which his
counsel replied that Staley had not paid the fine because he could
not raise the money, but that he thought that Staley should be
entitled to a hearing without having complied with the previous
order of the court. Counsel for the complainant then moved
that the order be made absolute, and this was done."

Thereupon the following order was made and filed:

"It appearing to the chancellor that upon petition filed by the
complainant in the above-entitled cause an order was entered,
dated twenty-second day of September, nineteen hundred and
ten, requiring the defendant, Samuel S. Staley, to show cause
before the chancellor, at the chancery chambers, in the city of
Jersey City, on Monday, the third day of October, nineteen hun-
dred and ten, at ten o'clock in the forenoon, why he should not
be adjudged guilty of contempt of court, in violation of the terms
of the permanent injunction granted against him in the above-
entitled cause, and be punished accordingly.

"And it further appearing by affidavits that copies of said pe-
tition and order were duly served personally upon the said
Staley, as required by the terms of said order.

"And the court, after considering the said petition and the ·
affidavits attached thereto, being of opinion that the said defend-
ant, Staley, did commit the contempt with which he is charged
and violated the terms of the injunction aforesaid, and that his
conduct was calculated to impair, defeat and prejudice the rights
of the complainant in this cause and was an affront to the
dignity and power of this court.

"It is thereupon on this fourth day of October, nineteen hun-
dred and ten, on motion of Lewis Starr, solicitor of the com-
plainant, ordered that the said Samuel S. Staley be and he is
hereby adjudged to be guilty of contempt by reason of the mis-
conduct alleged in said petition, and that he pay to the clerk of
this court a fine of fifty dollars for the use of the state, and that

he pay to the complainant the costs of these proceedings to be taxed.

"And it is also ordered that as further punishment for his said conduct, that the said Samuel S. Staley be committed to the common jail of the county of Camden, at Camden, in this state, and there confined for a period of three months from the date of his commitment, to run concurrently with a similar term of imprisonment imposed in another cause pending in this court between the parties hereto by order, dated this day, and for a further term until he shall have paid said fine and costs as aforesaid, unless the chancellor shall see fit sooner to discharge him.

"And it is further ordered that a warrant issue accordingly, directed to any sheriff, constable or other peace officer of the State of New Jersey."

From this order Samuel S. Staley has appealed, specifying as one ground of appeal that he was entitled to have proof made of his alleged contempt by competent testimony with opportunity to cross-examine the witnesses that testified against him.

*Mr. G. Dore Cogswell, Mr. Leo Belmont* and *Mr. George H. Bates* (of Philadelphia) on the brief, for the appellant.

*Mr. Lewis Starr,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

Contempts are of two sorts, civil and criminal. The distinction has been frequently pointed out. *Dodd* v. *Una, 40 N. J. Eq. 672; Thompson* v. *Pennsylvania Railroad Co., 48 N. J. Eq. 105; Frank* v. *Herold, 64 N. J. Eq. 371; Gompers* v. *Buck's Stove and Range Co., 221 U. S. 418; Gompers* v. *United States, May 11th, 1914.*

In a civil contempt the proceeding is remedial; it is a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court. Hence, if imprisonment be

ordered it is remedial in purpose and coercive in character, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself. As quaintly expressed, the imprisoned man "carries the keys to his prison in his own pocket." *Re Nevitt, 54 C. C. A. 622; 117 Fed. Rep. 451.*

Criminal contempts, on the other hand, as the term implies, are offences against organized society which, although they may arise in the course of private litigation, are not a part thereof, but, like other criminal offences, raise an issue between the public and the accused. Hence, if imprisonment be adjudged it is, by analogy with the criminal law, punitive in purpose and definite in character. So marked is the difference between the two sorts of imprisonment that it serves as a practical test by which the two sorts of contempt may be distinguished.

As was said by Mr. Justice Lamar, in *Gompers* v. *Buck's Stove and Range Co.:* "The distinction between refusing to do an act commanded (remedied by imprisonment until the party performs the required act), and the doing of an act forbidden (punished by imprisonment for a definite term), is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

Judged by this test the order brought up by this appeal was for a criminal contempt; it was for the doing of an act forbidden and the punishment was imprisonment for a definite term. In principle the present case is indistinguishable from *Frank* v. *Herold,* in which, as in this case, the defendants were adjudged guilty of a contempt of the court of chancery for willfully violating a restraining order of that court and were sentenced to imprisonment for a definite term. The appeal was dismissed by this court upon the express ground that the proceeding was a criminal contempt in which, as the law then stood, an appeal did not lie. The legislature has since given a right of appeal under which the present case is now before us. This statute was passed in 1909 (*P. L. 1909 p. 270*), and because of the previous absence of an appeal in criminal contempts the questions that now arise are for the most part *res nova* in this court.

The *Herold Case* establishes beyond question the criminal character of the present contempt; and the other cases cited are also precedents for the authority of the court in which the contumacious conduct is alleged to have occurred to institute and carry through such criminal proceeding to its termination. In *Dodd* v. *Una,* Mr. Justice Depue described this proceeding as "of a criminal nature, instituted by the court of its own motion—heard by it in a summary way—and punishable by imprisonment until the contempt be purged or by a fine payable to the state." It is not essential that the proceeding should be instituted by the court of its own motion; the matter may be, and in actual practice generally is, brought to the attention of the court by complainant's counsel who, in such case, acts as *amicus curiæ.* However set on foot, the person at whom the criminal proceeding is directed is entitled throughout to such of the substantial rights of a person accused of crime as are consistent with the summary nature of the proceeding and the processes of the forum in which it is administered. One of these rights of the accused is that the facts by which his guilt is determined and his punishment meted out shall be established by the oaths of witnesses subject to cross-examination and impeachment under the ordinary rules of evidence unless the accused has either expressly or by implication waived the right thus intended for his protection, as to which latter point nothing is now decided. *Magennis* v. *Parkhurst, 4 N. J. Eq. 433; Buckley* v. *Perrine, 55 N. J. Eq. 518; Holt's Case, 55 N. J. Law 385.*

Extended citation is unnecessary, in view of the fact that the right of which we are speaking is upon fundamental principles applicable to all trials for criminal offences, and in criminal offences the sort of evidence by which the guilt of the accused may be established depends not upon the character of the tribunal by which he is tried, but upon the nature of the offence for which he is tried, so that evidence that would be inadmissible upon an indictment for contempt, tried by the courts of ordinary criminal jurisdiction, is equally so when tried in a summary way by the court of chancery. "These contempts are infractions of the law visited with punishment as such. If such acts are not criminal we are in error as to the most fundamental

characteristic of crimes as that word has been understood in English speech. So truly are they crimes that it seems to be proved that in the early law they were punished only by the usual criminal procedure (*3 Trans. R. His. Soc (N. S.) 147, 1885*), and that in England at least it seems that they may be, and preferably are, tried in that way." The quotation is from the opinion delivered by Mr. Justice Holmes in *Gompers et al.* v. *United States,* filed May 11th, 1914, and not yet reported. The relegation of criminal contempts to the courts of ordinary criminal jurisdiction insures a tribunal in which the functions of prosecutor, judge and jury are exercised by different officers against none of whom was the contumacious conduct directed; if, however, the affront is to be punished by the tribunal at which it was aimed, and which by its constitution is both judge and jury and accuser as well, it is all the more important that there should be a scrupulous observance of the substantial rights of the defendant, one of which unquestionably is that of being represented by counsel when the incriminating testimony is given with right to cross-examine the witnesses, who are, in effect, state's witnesses, and to lay, if possible, the foundation for their contradiction or impeachment.

In the case now before us no witnesses were examined, although the accused was represented by counsel who was present in court upon the return of the rule to show cause. Counsel, it is true, moved for a continuance, which was denied, but such motion had reference solely to the taking of the deposition of the defendant and in no way suggested that the case against the defendant should be made out otherwise than by lawful testimony. This motion for a continuance the court denied, apparently because of an unpurged contempt in another cause. The denial of this motion was a matter of discretion that we do not review. When, however, this motion was disposed of there remained nothing for the court to do but to hear the rule to show cause which on its face disclosed that its object was to have the court adjudge whether or not the defendant was guilty of a contemptuous violation of its permanent injunction—*i. e.,* a proceeding at law for a criminal contempt and not a motion in the equity cause or a step in that private litigation. This is the precise point on

which the case of *Gompers* v. *Buck's Stove and Rrange Co.* turned, in which the ground of reversal was that while the judgment was appropriate only to a proceeding at law for a criminal contempt, the proceeding throughout was framed and treated as part of the civil cause in equity. "There are some differences," said the court in that case, "between the two classes of proceedings which involve substantial rights and constitutional privileges. Without deciding what may be the rule in civil contempts, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt and cannot be compelled to testify against himself," citing a large number of cases.

It is hardly necessary to add that among these substantial rights is that the defendant's guilt must be proved by judicial evidence, *i. e.,* by testimony to which the ordinary rules of evidence are applied, which is not the case with *ex parte* affidavits such as those upon which the defendant in the case before us was convicted. These *ex parte* affidavits, if served upon the defendant, as to which the case is silent, were not legal evidence in a proceeding at law such as this. *Baldwin* v. *Flagg, 43 N. J. Law 496.*

The chancery rules referred to by Mr. Justice Depue do not and could not make such affidavits evidence in this criminal proceeding—they were lacking in the essential elements of legal evidence. As was said by Chief-Justice Beasley in *West Jersey Traction Co.* v. *Camden, 58 N. J. Law 362,* speaking of the *ex parte* affidavit on which the writ of *certiorari* is allowed: "Such oath has no semblance of juridical testimony. The rules of evidence are not applied to it, and it is used against a party who has no knowledge of its existence. Such a basis as this is incapable of supporting anything in the nature of a judicial decision."

The defendant is not to be held responsible for the manner in which the case against him was conducted; his counsel waived nothing and acquiesced in nothing excepting as to the adverse ruling of the court on his motion for a continuance. If the incriminating witnesses had been sworn and examined, as they

should have been, he was there to cross-examine them or to lay the ground for their contradiction or impeachment. The *ex parte* affidavits, if known to .the defendant, were not recognized by him as legal evidence; answering affidavits were not filed, hence the defendant did not even apparently acquiesce in that method of trial. We can reach, therefore, but one conclusion, and that is that the order sentencing the defendant to a definite term of imprisonment for a criminal contempt was made without out any evidence of his guilt that was legally admissible in such a proceeding.

That an order so made will be set aside upon appeal goes without saying. It may well be that such order is also open to the same objection that led the supreme court of the United States to set aside a similar order in *Gompers* v. *Buck's Stove and Range Co.*, the syllabus of which case is:

"A punitive sentence appropriate only to a proceeding at law for criminal contempt where the contempt consisted in doing that which had been prohibited by an injunction could not properly be imposed in contempt proceedings which were instituted, entitled, tried, and up to the moment of sentence, treated as a part of the original cause in equity."

If there is any essential difference between the case cited and the one before us, it is not apparent upon a somewhat careful examination; or perhaps it would be more frank to say that while it is apparent that there is no difference, we prefer to place our decision upon the meritorious ground already stated rather than upon the narrow one of an error in procedure.

We are asked by the appellant's counsel to say that the vice-chancellor, in any event, had no power to make the order appealed from, and section 102 of the Chancery act, and the case of *Seastream* v. *New Jersey Exhibition Co., 69 N. J. Eq. 15*, are cited to us.

The conclusion we have reached renders it unnecessary to consider this question, but we point out that section 102 applies to the vice-chancellors sitting as judicial officers and not to orders made by the chancellor with or without their advice. It may also be well to point out that what was said by Chancellor Magie in the *Seastream Case* was not approved by this court when that

case came before it upon appeal (*Seastream* v. *New Jersey Exhibition Co., 72 N. J. Eq. 377, 380*), and also that the absence of an appeal, which was an influential factor in the case in chancery, has since been altered by the enactment of the statute under which the present appeal is now before us. It is further argued that if a vice-chancellor may try a criminal contempt, he can do so only when the matter is expressly referred to him, and that such a reference is not covered by the general chancery rules. The question is not free from difficulty, and is not now passed upon, for the reason that such a decision is entirely unnecessary to the rights of any party now before us.

For the reason already stated the order brought up by this appeal is reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Bogert, Vredenburgh, White, Heppenheimer—12.