The respondent, James Larkin, is charged with having violated certain provisions of an ad interim restraint contained in an order to show cause which appears to have been issued April 16th, 1927, though erroneously dated April *Page 196 
16th, 1922. The solicitor of the respondent urges that the mattersub judice is treated as a step in a civil cause, that is, in the case of General Woodcraft Company, Incorporated,complainant, v. Local No. 560, International Brotherhood ofTeamsters, Chauffeurs, Stablemen and Helpers of America et al., defendants, and not, as he claims it should be, as a separate and distinct proceeding. While I do not deem it necessary for the purpose of my determination of the matter now before me to pass upon the merit of the aforesaid objection, nevertheless, I deem it expedient to say that the propriety of the aforesaid objection is indicated by the opinion of our court of errors and appeals in the case of Staley v. South Jersey Realty Co., 83 N.J. Eq. 300,
and see particularly bottom of page 306 and upper part of page 307. The proceeding sub judice is of a criminal nature, and must be governed by the legal principles applicable to the trial of criminal cases. In re Verdon, 91 N.J. Law 491. See, also, Staley v. South Jersey Realty Co., supra, wherein the court of errors and appeals declared that "a proceeding instituted in the court of chancery for the purpose of having that court adjudge whether or not the defendant in a cause pending therein was guilty of contemptuous violation of an injunction issued by it is a proceeding at law in a criminal contempt in which the defendant is entitled to all of the substantial rights of a person accused of crime that are consistent with the summary nature of the proceeding and the processes of the tribunal in which it is administered." In the aforesaid case the court declared contempts to be of two sorts, civil and criminal, and in pointing out the distinction between the two, says:
"In a civil contempt the proceeding is remedial; it is a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court. Hence, if imprisonment be ordered it is remedial in purpose and coercive in character, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself. As quaintly expressed, the imprisoned man "carries the keys to his prison in his own pocket." Re Nevitt, *Page 197 54 C.C.A. 622; 117 Fed. Rep. 448. Criminal contempts, on the other hand, as the term implies, are offenses against organized society which, although they may arise in the course of private litigation, are not a part thereof, but, like other criminal offenses, raise an issue between the public and the accused. Hence, if imprisonment be adjudged, it is, by analogy with the criminal law, punitive in purpose and definite in character. So marked is the difference between the two sorts of imprisonment that it serves as a practical test by which the two sorts of contempt may be distinguished. As was said by Mr. Justice Lamar, in Gompers v. Buck's Stove and Range Co.: "The distinction between refusing to do an act commanded [remedied by imprisonment until the party performs the required act], and the doing of an act forbidden [punished by imprisonment for a definite term], is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."
It is unnecessary to cite authorities for the well-established rule of law that in proceedings of a criminal nature the innocence of a defendant is presumed, and his guilt must be established by legal evidence, beyond a reasonable doubt. The only material fact definitely established against the respondent (and such he admits) is that he talked with several contractors (Nappi and Desevio) about lump work which he says he had received information they were prosecuting, but all that was definitely established in this respect was that he called their attention to a labor union rule relating to work of that character. It cannot reasonably be urged that the respondent, as business agent of the labor union with which he is affiliated, and of which the aforesaid contractors were members, would be unauthorized to direct their attention to the rule of the union which he had received information they were violating, notwithstanding such members were engaged in the business of contracting, which appears to be permissible under the union rules. Exhibit D 1, constitution and laws of the United Brotherhood of Carpenters and Joiners of America, the parent body of the carpenters' union with which the respondent is affiliated, provides (page 37, section *Page 198 
43 R): "A member can remain a contractor, or enter into the business of contracting, provided he does not do any lump work
for a carpenter contractor." Exhibit D 2 entitled: "United Brotherhood of Carpenters and Joiners of America." "Constitution, By-Laws and Working Rules of Local Unions and District Council of Hudson County, New Jersey, and Vicinity," provides (page 47, rule 47): "No member shall lump work or work for a lumper." That it is not unlawful for members of a labor union to persuade its members, by peaceable means, to adhere to rules of the union not inimical to law, is clearly indicated by the Daly act (P.L. 1883p. 36; 3 Comp. Stat. p. 3051 § 128), which has been referred to in many cases, among which, New Jersey Paint Co. v. Local26, c., 96 N.J. Eq. 632, wherein it was held a labor union "may make rules and regulations, passed in good faith, providing for what they deem to be an economic advantage to themselves." The respondent specifically and in toto denied the allegations made against him, other than as to his talk with Nappi and Desevio, as hereinabove referred to. The testimony adduced to prove that the respondent had violated the order of the court, as alleged, is very uncertain and contradictory, does not sustain the allegations made against him, and, consequently, does not warrant the court to adjudge him guilty of the alleged contempt. It is a well-known principle in contempt proceedings that a respondent shall not be adjudged guilty of contempt if there is a reasonable doubt on the facts and on the law as to his guilt. BarnettFoundry Co. v. Crowe, 80 N.J. Eq. 109. The respondent is not guilty, in my judgment, of the contempt charged against him, and I will advise an order accordingly. *Page 199