This is the appeal of Harry G. Hendricks from an order adjudging him guilty of contempt.
It appears that on November 29th, 1929, on the advice of Vice-Chancellor Church, the court of chancery appointed Hendricks as one of the receivers of Earl Radio Corporation and he took over the active management of the corporation's affairs. He opened various bank accounts in his name, as receiver of the corporation, and receivership funds were deposited in these accounts. Between April 30th, 1930, and November 4th, 1931, he embezzled, by appropriating to his own use, such receivership funds aggregating $149,000. Such misappropriations were not discovered until April, 1932, at which time an order was entered by Vice-Chancellor Backes that an attachment for contempt issue against him, and proofs were taken.
The proof that appellant had embezzled and misappropriated receivership funds was conclusive and was supported by documentary evidence consisting in part of checks which he had drawn on receivership accounts, payable to himself, the proceeds of which were used by him in his personal business. *Page 95 
Indeed appellant admitted that he had used the receivership funds in question in his personal business, and that he appropriated the funds "on his own authority and without consulting with anyone."
At the conclusion of the hearing before Vice-Chancellor Backes, appellant was adjudged guilty of contempt and thereafter an order was entered that he "be committed in the state prison at Trenton for a period of three years."
We think that the order should not be disturbed.
The court of chancery has power to punish as contempts acts which tend to bring contempt upon it in the exercise of its judicial functions, or which tend to degrade or obstruct the administration of justice. Staley v. South Jersey Realty Co.
(Court of Errors and Appeals, 1914), 83 N.J. Eq. 300; Dorrian
v. Davis (Court of Chancery, 1929), 105 N.J. Eq. 147; In reHayden (Court of Chancery, 1927), 101 N.J. Eq. 361. See, also, In re Cheeseman (Supreme Court, 1886),49 N.J. Law 115.
The conduct of this receiver in appropriating to his own use the funds in his possession as such receiver, without leave of the court, constituted a gross breach of trust tending to degrade and obstruct the administration of justice, and to bring the court into disrepute, and was a criminal contempt of court and may be punished by fine or imprisonment, or by both, at the discretion of the court.
Thus in Cartwright's Case (1873), 114 Mass. 230, the supreme judicial court of Massachusetts, speaking through Chief-Justice Gray and referring to a receiver's conduct in misappropriating receivership funds, said:
"The taking and spending by this receiver for his own use, whether with or without the concurrence or advice of other receivers, of more than $10,000 of the funds in his possession as an officer and representative of the court, was a gross breach of trust, tending to bring reproach, disgrace and distrust upon the administration of justice, and was a contempt of the authority of the court, and punishable, according to the law of the land and the established practice of all courts of similar jurisdiction, by fine or imprisonment at the discretion of the court." *Page 96 
In the course of that opinion the court set forth the general principles underlying the power to punish for contempt in such cases.
Also in High Rec. (4th ed.) § 280, the author says:
"The appropriation by the receiver to his own use of the funds in his possession, without leave of court, constitutes a gross breach of his trust, and a contempt of court which may be punished by fine or imprisonment, or by both, at the discretion of the court."
Here, the appellant contends that the order adjudging him guilty of contempt was "premature," since he had not been ordered to return the misappropriated funds. But this contention ignores the nature of the contempt here involved. It was a criminal contempt, an offense against society, and not civil contempt consisting of a failure to perform an act commanded. The distinction between the two types of contempt is set forth inStaley v. South Jersey Realty Co., supra. There Mr. Justice Garrison pointed out that contempts are of two sorts, civil and criminal; that in a civil contempt the proceeding is remedial, a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court, and if imprisonment be ordered it is remedial in purpose and coercive in character, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself; that criminal contempts, on the other hand, as the term implies, are offenses against organized society which, although they may arise in the course of private litigation, are not a part thereof, but, like other criminal offenses, raise an issue between the public and the accused, and if imprisonment be adjudged it is, by analogy with the criminal law, punitive in purpose and definite in character. Mr. Justice Garrison then quoted with approval the language of Mr. Justice Lamar in Gompers v. Buck's Stove andRange Co., 221 U.S. 418, as follows: "The distinction between refusing to do an act commanded [remedied by imprisonment until the party perform the required act] and the doing of an act forbidden [punished by imprisonment for a definite *Page 97 
term], is sound in principle, and generally if not universally, affords a test by which to determine the character of the punishment."
Appellant's criminal contempt was fully complete when he misappropriated the receivership funds, and the discretion of the court in respect to punishment cannot be controlled by the fact that no order was made to restore the funds so appropriated, nor by the fact of his not having the present means of repaying what he had abstracted. See Cartwright's Case, supra; High Rec.,supra. The statement in appellant's brief that "the appropriation was made pursuant to a practice sanctioned by the court" is without foundation in the record.
The appellant further contends that "the order was erroneous in sentencing Hendricks to the state prison."
But that is not so. The appellant cites cases in other jurisdictions for the proposition that a person adjudged guilty of contempt may not be sentenced to imprisonment at hard labor. (Here there was no sentence to hard labor.) The cases cited seem to be based upon the provisions of state constitutions and statutes unlike our own. Moreover, they seem to proceed upon the theory that imprisonment in the penitentiary at hard labor could be imposed only as a punishment for a crime and that contempt was not a crime.
But that doctrine was repudiated by this court in Staley v.South Jersey Realty Co., supra, where, after defining the criminal contempts as "offenses against organized society," the punishment for which is "punitive in purpose and definite in character," Mr. Justice Garrison quoted with approval from the opinion of Mr. Justice Holmes in Gompers v. United States,233 U.S. 604, as follows: "These contempts are infractions of the laws, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech. So truly are they crimes that it seems to be proved that in the early law they were punished only by the usual criminal procedure (3 Trans. R. His. Soc. (1885 — N.S.)147), and that at least in England it seems that they may be and preferably are tried in that way." *Page 98 
Since in this state criminal contempts are crimes and may be punished as such, it seems clear that the court had authority to sentence appellant to imprisonment at hard labor, if it had seen fit to do so.
However, the appellant insists that the sentence imposed means imprisonment at hard labor, and therefore "he could not be ordered to the state prison." For this proposition he cites cases expressly based on article 3 of the old statute of 1876 relating to the state prison, which declared that the keeper shall receive "every person convicted under the laws of the state, and sentenced to imprisonment and hard labor for any term not less than six months." 4 Comp. Stat. p. 4910. He quotes from State
v. Rosenblum, 100 N.J. Law 240, where the supreme court said: "In this state it has been held that where a statute provides `imprisonment' without the addition `and at hard labor,' it means imprisonment in the county jail. State v. Gray,37 N.J. Law 368 (at p. 369). By article 3 of the State Prison act (4Comp. Stat. p. 4910), the keeper of the prison can only properly receive persons sentenced to imprisonment and at hard labor for any term not less than six months."
But the entire statute of 1876 relating to the state prison, including article 3 thereof, was repealed by P.L. 1918 ch. 281p. 1063, and the supervision of the state prison was placed byP.L. 1918 ch. 147, under the department of charities and corrections, and it was therein declared that the keeper shall receive "every person sentenced to imprisonment in the state prison." P.L. 1918 ch. 147 p. 365. Since the appellant was sentenced to imprisonment in the state prison, it was therefore the duty of the keeper to receive him.
Finally appellant contends that "the sentence for three years is entirely too severe."
But we cannot say that it is so. The authorities uniformly hold that the extent of punishment for criminal contempt is within the discretion of the trial court and will not be disturbed on review in the absence of abuse of such discretion. Seastream v. NewJersey Exhibition Co., 72 N.J. Eq. 377; Oates v. United States,233 Fed. Rep. 201; 147 C.C.A. 207; and cases collected in 13C.J. 105. *Page 99 
Here the evidence does not show an abuse of discretion. The appellant, over a period of eighteen months embezzled and appropriated to his own use receivership moneys totaling $149,000 which had been entrusted to him as an officer of the court of chancery. His conduct was not only a gross breach of trust, but tended to degrade the court of chancery and obstruct the administration of justice.
The order under review must be affirmed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.
For reversal — None.