124 N.J. Super. 428 (1973)
307 A.2d 619
IN THE MATTER OF LOUIS ANTHONY MANNA, CHARGED WITH CIVIL CONTEMPT OF THE STATE COMMISSION OF INVESTIGATION,
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1973.
Decided July 3, 1973.
*432 Before Judges CARTON, MINTZ and SEIDMAN.
Mr. Donald R. Conway argued the cause for appellant Louis Anthony Manna.
Mr. Charles D. Sapienza argued the cause for respondent New Jersey State Commission of Investigation (Mr. Martin G. Holleran, Executive Director, of counsel).
The opinion of the court was delivered by CARTON, P.J.A.D.
Louis Anthony Manna appeals from orders denying his motion to suppress a subpoena directing him to appear before the State Commission of Investigation (S.C.I.), incarcerating him "until such time as he purges himself of contempt by proceeding as ordered," and denying his motion to terminate S.C.I. proceedings against him.
Manna was served with a subpoena on April 13, 1972 to appear before an executive hearing of the State Commission of Investigation on April 19, 1972. The subject of the investigation was:
* * * Whether the laws of New Jersey are being faithfully executed and effectively enforced, with particular reference to organized crime and racketeering; whether public officers and public employees have been properly discharging their duties with particular reference to law enforcement in relation to criminal elements; and whether and to what extent criminal elements have infiltrated the political, economic, and business life of New Jersey.
*433 After several postponements Manna appeared before the Commission on May 31, 1972 but refused to be sworn or to testify. On July 19, 1972, after additional adjournments, Manna again appeared and refused to testify.
Meanwhile, Manna moved to suppress the subpoena. Judge Larner denied the motion but ordered that a statement of the geographical area or areas which are the subject of investigation be served upon Manna prior to his appearance. The Commission apparently specified a certain county or counties.
On July 19, after Manna again refused to testify, the S.C.I. petition that a warrant issue for Manna's arrest, directing that he be brought before the court to answer charges of contempt. Judge Lenox ordered that Manna be committed until he purged himself as already indicated.
Manna's motion of July 18, 1972 for determination of all proceedings against him on federeal and state constitutional grounds was heard and denied by Judge Larner on September 8, 1972. Bail was also refused. Judge Larner stated:
In this case, there is no issue of innocence or guilt. There is no accusation. I find a blatant refusal of the defendant to comply with the Court orders. Without any justification. And therefore, I feel that any appeal taken would merely give him what he's looking for, the freedom and refusal to testify. This, to my mind, thwarts and frustrates the entire purpose of this order, incarcerating him at this time.
Manna has also applied for leave to appeal from the refusal to grant bail. The three appeals have been consolidated. Admission to bail was also denied.
The crucial issue  whether a witness can be incarcerated indefinitely for refusing to testify before the S.C.I. as an investigatory body when he has been granted testimonial immunity  has been definitively resolved by our courts in In re Zicarelli, 55 N.J. 249 (1970), aff'd 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). Almost all of Manna's numerous arguments advanced on this appeal have all been *434 directly or implicitly decided adversely to his present contention.
There is no merit to his contention that he is entitled to bail pending appeal pursuant to R. 2:9-5. That rule and its companion, R. 2:9-4, provide that bail shall be granted "unless * * * it appears that the appeal is taken on insubstantial grounds or for [the] purposes of delay * * *." Manna's only new ground of appeal is that the indefinite incarceration is a cruel and unusual punishment. That argument is frivolous. The recalcitrant witness can end his incarceration at any time. Bail was, therefore, properly denied.
The contention that the statute establishing the S.C.I. (N.J.S.A. 52:9M-1 et seq.) offends Art. III, par. 1 of the New Jersey Constitution mandating a separation of governmental powers among three branches, is likewise devoid of merit. Our Supreme Court in Zicarelli said:
The power to investigate reposes in all three branches. * * *
A separation-of-powers issue would arise only if the Legislature authorized the S.C.I. to go beyond investigation and to take action which invades an area committed exclusively to another branch. So, for example, if the S.C.I. were empowered to indict or to adjudicate charges of violation of our criminal laws, there would be an encroachment upon the judicial branch * * *, and if the S.C.I. were authorized itself to prosecute criminal charges, the executive power would be involved. But the S.C.I. does none of this. Its investigations will at most yield material which may also be of interest to executive officials and be referred to them for handling. This being so, the S.C.I. is not vested with authority peculiarly executive in the sense of the separation-of-powers doctrine. * * * [at 263-264]
Nor does the statute offend the constitutional directive that every law shall embrace only one object that shall be expresed in the title. Art. IV, § VII, par. 4 of the State Constitution reads:
To avoid improper influences which may result from the intermixing in one and the same act such act such things as have no proper relation to each other, every law shall embrace but one object, and *435 that shall be expressed in the title. This paragraph shall not invalidate any law adopting or enacting a compilation, consolidation, revision or rearrangement of all or parts of the statutory law.
The purpose of this provision is to prevent frauds upon the legislative body by means of uncertain, misleading or deceptive titles to statutes. Kline v. New Jersey Racing Comm'r, 38 N.J. 109 (1962). It does not require a resume of all the provisions of the act. It simply requires that the members of the Legislature who are considering the proposed bill be given adequate notice of its subject matter. See Ahto v. Weaver, 39 N.J. 418 (1963).
The title of the legislation in question is, "An Act Creating a Temporary State Commission of Investigation; prescribing its functions, powers and duties; making an appropriation thereof." L. 1968, c. 266. The title clearly suggests that the object of the legislation is to create a temporary investigation agency.
Appellant's challenge on First Amendment grounds has also been decided by the State Supreme Court in Zicarelli, supra:
Zicarelli and Occhipinti charge that the questions put to them offended their freedom of association guaranteed by the First Amendment. Sweezy v. New Hampshire by Wyman, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957), which they cite, dealt with a legislative inquiry into political associations. Here the questions relate to an allegedly massive criminal organization, and to the witness's associations in that contest. The subject matter is incontestably criminal and the interest of the State is manifest. We see no affront to the values protected by the First Amendment. [55 N.J. at 273]
The cases cited by Manna for the proposition that disclosure of group affiliation may constitute a restraint on freedom of association, Gibson v. Fla. Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963), and N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), concern groups who pursue lawful interests, not illegal ones. See Button, at 429, 83 S.Ct. 328 *436 and N.A.A.C.P. v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
The Zicarelli court also addressed itelf to the argument that the S.C.I. investigation permits or constitutes an invasion of privacy:
Appellants complain that the questions "sought to probe into the most secret recesses of the witness' minds and to expose these private thoughts to public view," and this they say is barred by the Fourth Amendment, alone or in conjunction with the First and Fifth Amendments. Granted the right of the Legislature to inquire, the pertinency of the questions and the sufficiency of the immunity with respect to self-incrimination, all of which must be accepted for the immediate purpose, the proposition advanced, simply stated, is that the Constitution prohibits a subpoena to a mere witness. It is plainly frivolous. [In re Zicarelli, supra 55 N.J. at 273-274]
Nor does the statute deprive individuals being investigated of equal protection of the laws. This argument assumes that the statute in question, and/or its practical application, singles out individuals of a particular ethnic background, as well as those persons whom the Commission believes to be involved in racketeering and organized crime, for investigation.
N.J.S.A. 52:9M-2 states that the Commission shall have the duty and power to investigate "The faithful execution and effective enforcement of the laws of the State, with particular reference but not limited to organized crime and racketeering." There is a total absence of any mention of a particular ethnic group. Nor is there anything in the record below of the history of this Commission which indicates, as a practical matter, that it has proceeded along ethnic lines.
On the other hand, the class of persons to which the terms "racketeering" and "organized crime" refer has a reasonable and rational relation to the fulfillment of the essential legislative purpose. Support for this conclusion may be found in the very cases cited by appellant. Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 552 (1949), states that a statute satisfies the constitutional standards of the Fourteenth *437 Amendment, in that the State may make distinctions of degree having a rational basis "if there be any conceivable state of facts which would afford reasonable grounds for its action."
Unlawful activities affecting the State as practiced by members of organized crime clearly constitute a "state of facts" that justify the Commission's investigations.
Petitioner also contends that the immunity provided for in N.J.S.A. 52:9M-17 is unconstitutional. The record is barren of anything indicating that the Commission has failed to promulgate standards or guidelines regarding whom to question or from whom to seek evidence. Nor does the record support the position that the Commission has not provided standards regarding its decision to grant immunity.
The Commission's jurisdiction is defined by N.J.S.A. 52:9M-2, 3, 4 and 7. Furthermore, N.J.S.A. 52:13E-1 et seq. ("Investigating Agencies, Code of Fair Procedure"), establishes standards and guidelines with which the Commission must comply. The S.C.I.'s brief indicates that this Code was served upon petitioner together with a subpoena. There is no statutory requirement to institute contempt proceedings against a recalcitrant witness who invokes the Fifth Amendment. Nor is the refusal to testify penal in nature necessarily calling for criminal contempt prosecution and investigation. The Commission has the alternative option to proceed by way of R. 1:10-5 ("Relief to Litigant"). We see no merit to the contention that a witness can be prosecuted for testimony given after a grant of "use plus fruits" immunity. Explicit in the contention is that the information elicited from a witness under such terms cannot be used against him.
The provision for indeterminate incarceration does not render the statute unconstitutional for failure to provide for jury trial. Appellant's reliance on Baldwin v. New York, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970), is misplaced. Baldwin held that "no offense can be deemed `petty' for purposes of the right to trial by jury *438 where imprisonment for more than six months is authorized." As Zicarelli points out (at 271-272), incarceration under N.J.S.A. 52:9M-1 is the result of a civil contempt proceeding, not a criminal prosecution. Since the incarceration here is a civil one which the appellant may at his pleasure end, the right to trial by jury does not apply.
The indeterminate feature of the contempt procedure does not constitute cruel and unusual punishment. Civil contempt is employed as a coercive sanction to compel the witness to do what the law made it his duty to do. Penfield Co. v. S.E.C., 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 (1947). Civil contempt is designed to provide a litigant with a remedy against an opponent's refusal to do what he ought to do. Criminal contempt has as its purpose the vindication of the authority of the court through punishment of the wrongdoer. United States v. Consolidated Productions, Inc., 326 F. Supp. 603, 606 (D.C. Cal. 1971). This distinction according to purpose indicates that a party incarcerated under a civil contempt order is not enduring a sanction which the Eighth Amendment intended to limit. The principle has aptly been stated that such a man "carries the keys to his prison" in his own pocket. Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 90 A. 1042 (1914). He need not be incarcerated at all.
In Wyman v. Uphaus, 100 N.H. 436, 130 A.2d 278 (1957), the New Hampshire Supreme Court considered a similar argument and rejected it. That result was affirmed by the United States Supreme Court sub nom. Uphaus v. Wyman, 360 U.S. 72, 81, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1959).
The provisions of N.J.S.A. 52:13-5 et seq. ("Contempts of Joint Legislative Committees") limiting incarceration to six months do not apply. The language of those statutory sections concerns only "any investigation or inquiry by any committee constituted by joint resolution of the legislature." The S.C.I. is not a joint legislative committee, but an independent body created by statute.
*439 As to the subpoena, we note that its words adequately informed the witness of the Commission's scope of inquiry. The subpoena stated that the general subject of investigation would be organized crime and racketeering in the State of New Jersey, the corruption of law enforcement officials in the State, and the infiltration of the State's political, economic and business life by criminal elements. This description appears to "be sufficiently limited in scope, relevant in purpose and specific in direction so that compliance will not be unreasonably burdensome." See v. Seattle 387 U.S. 541, 544, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). Appellant fails to show how compliance would be burdensome.
Although the original subpoena in this case did not specify any geographic location within the State as the locus of the acts which would be investigated, it fairly apprised appellant of what information was expected from him. The subpoena in Zicarelli specified the City of Long Branch. Here the court ordered the S.C.I. to inform Manna which geographical subdivision or subdivisions of the State would be involved. This, coupled with the specification of a certain county or counties, is adequate compliance with due process requirements in this respect.
Affirmed.