PAUL PERLMUTTER, SIDNEY KRONHEIM AND SAMUEL MEYERSON, PLAINTIFFS-RESPONDENTS, v. MARKUS DeROWE, DEFENDANT-APPELLANT.

Argued February 2, 1970—Last supplemental memorandum filed January 13, 1971—Decided March 1, 1971.

Mr. *Martin G. Holleran* argued the cause for defendant-appellant (*Mr. Edward C. Laird,* on the brief).

Mr. *Martin S. Goldman* argued the cause for plaintiffs-respondents (*Messrs. Goldman, Goldman & Caprio,* attorneys; Mr. *Martin S. Goldman,* of counsel).

The opinion of the Court was delivered by

HALL, J. Plaintiffs sued defendant in the Law Division to recover $50,000 they had delivered to him, partly for their purchase of stock in a corporation in which he was a large stockholder, and partly as a loan, for certain specified purposes, to defendant personally or to the corporation with his personal guaranty. Allegedly the stock was not delivered and the loan not repaid. The transaction took place in New York; defendant is a resident of New Jersey.

On the basis of affidavits supporting the allegations of the complaint that defendant had fraudulently converted the money for other uses, original process was a capias ad respondendum (*ca. re.*) pursuant to *N. J. S. A.* 2A:15-42(d).[1]

---

[1]*N. J. S. A.* 2A:15-42(d) provides:

A capias ad respondendum shall issue in an action founded upon contract, express or implied, due to plaintiff from defendant, only when the proof establishes the particulars specified in one or more of the following subparagraphs:

\* \* \* \* \* \* \* \*

d. That defendant fraudulently contracted the debt or incurred the demand.

\* \* \* \* \* \* \* \*

The writ issued on the *ex parte* order of a Superior Court Judge sitting in Essex County, which directed that defendant be held to bail in the amount of $50,000 (the amount of the alleged debt; see *N. J. S. A.* 2A :15–42), conditioned, in partial accord with *R.* 4 :51–2 (a) and (b), that he "render himself amenable to the orders and process of this Court at all times pending this action and to such process as may be issued to compel the performance of any judgment entered there."[2] The order also provided that upon arrest defendant was to be brought forthwith before a judge of the county.

The Sheriff of Essex County took defendant into custody under the writ at his home at 1 :30 A.M. on December 1, 1969 and committed him to the county jail. Later that morning he and his attorney appeared before one of the judges in the county, who, we understand, informed them of the nature of the proceedings and denied an oral request for reduction of bail. Four days later defendant brought on a formal motion for discharge of the writ and to set aside the order to hold to bail. *R.* 4 :51–3 (a). The principal ground was that plaintiffs' affidavit-proofs, upon which the writ and order issued, were insufficient to establish that defendant fraudulently contracted the debt sued on. Defendant submitted his own affidavit, denying any fraud or misuse of the funds and stating he was completely insolvent and unable to pay back the money or raise the bail. Plaintiffs, who under the cited rule have the burden of proof on such a motion, offered answering affidavits and the matter was heard by the judge on the affidavits without oral testimony. The court found that plaintiffs' proofs were ample to establish the fraud required for the issuance of a *ca. re.* and denied the motion, remanding defendant to custody.

Defendant then sought leave to appeal the denial of the motion to the Appellate Division and for release from custody

---

[2]The cited rules also provide the further condition of the bond, not specified by the order here, that defendant "shall appear before the court, or any officer thereof, when so required by court order."

pending the appeal. In his papers he raised for the first time the contention that incarceration for an alleged civil debt prior to a judgment in the suit, unless bail be furnished to secure the debt, is violative of the federal and state constitutions. A judge of the Appellate Division denied release and defendant then applied to this court. *R.* 2:2–2(b); 2:9–5(b) last sentence. Having some doubt about the proper interpretation of the previously quoted condition of a *ca. re.* bond, we granted leave to appeal from the trial court's order denying the motion to discharge the writ, and authorized defendant's release from custody upon the filing of a *personal appearance* surety bond in the sum of $25,000.[3] The bond was filed and defendant was released on December 19 after an incarceration of 19 days.

 We may first quickly dispose of defendant's renewed contention that plaintiffs' proofs were insufficient to warrant the issuance of a *ca. re.* While it would have been more desirable for the trial court to have required the presentation of oral testimony, with cross-examination (*R.* 4:51–3(a)), than to have decided the matter on affidavits which contained much hearsay and conclusory statements, we think there was sufficient competent evidence before it from which the conclusion could reasonably be reached that the issuance of the writ was warranted, especially in light of the view in this state that it need not be shown that the original consensual agreement was contemporaneous with the fraudulent design of defendant. *Allied Financial Corp. v. Steel Panel Sales Corp.*, 86 *N. J. Super.* 65, 74–75 (App. Div. 1964), certif. *denied sub. nom. Allied Financial Corp. v. Financial Associates, Inc.*, 44 *N. J.* 411 (1965), and cases therein cited.

---

[3] The bond recites that its purpose "is solely to guarantee the appearance of the Principal at any time he is directed to appear by the Superior Court or the Supreme Court of New Jersey and is not for the purpose of guaranteeing either the defense of this action or the payment of any judgment or costs which may be levied against the Principal."

■ The main thrust of the original briefs and oral argument of the parties was directed to the constitutional contention of defendant previously mentioned. This was grounded on the assumption, indulged in not only by both counsel, but also by the judges who dealt with the matter below, that the modern condition of a *ca. re.* release bond, prescribed by *R.* 4:51–2(a) and (b) earlier quoted, amounts to a guarantee of payment by the surety of any judgment obtained against defendant in the suit. Our subsequent research led us to question this proposition and we requested supplemental memoranda. We are now thoroughly convinced that, despite an apparent popular conception to the contrary, the present bond condition, and indeed the prior form of condition prescribed until the predecessor of *R.* 4:51 was adopted effective January 1, 1952, does not constitute a guarantee of payment, but merely assures defendant's physical presence when ordered by the court, especially when his surrender is required pursuant to the corollary writ of capias ad satisfaciendum (*ca. sa.*) issued after judgment has gone against him in the action.

The reason for our conclusion requires a brief excursion into history. Both writs are ancient and were broadly used in the early English practice when imprisonment for debt was prevalent. That practice was followed in the early days of this state. For our purposes, however, we need not go back of our Constitution of 1844 which prohibited such imprisonment "in any action, or on any judgment founded upon contract, unless in cases of fraud; * * *." Art. I, par. 17. (The identical provision appears in our present constitution. *Const.* 1947, Art. I, par. 13). The effect was to leave the determination of what constituted fraud to the Legislature. *Ex Parte Clark,* 20 *N. J. L.* 648, 650 (Sup. Ct. 1846). The Legislature acted in 1846 (in connection with the revision of the laws authorized in 1845 and adopted in 1846, but not printed until 1847), Rev. 1845, *p.* 321–322, renewing and adding to an earlier statute. The result was a limitation of the grounds for the issuance of a *ca re.* to

cases of a debt or demand founded upon contract, express or implied, where it is established to the satisfaction of the court that: (1) defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced with intent to defraud his creditors; or (2) he has property or rights in action which he fraudulently conceals; or (3) he has assigned, removed or disposed of any of his property with the intent to defraud his creditors or is about to do the same; or (4) he fraudulently contracted the debt or incurred the obligation respecting which the suit is brought. If such proofs were produced, the court was empowered to make an order to hold defendant to bail in such sum as plaintiff swore was due and directing the issuance of a *ca. re.,* which commanded the sheriff to take defendant into custody. These provisions substantially remain in effect today. *N. J. S. A.* 2A:15-42.[4]

An 1846 statute also provided for the form of recognizance of bail (now the release bond) to be furnished, in double the amount for which he was held to bail, to secure discharge from custody pending the trial of the action. Rev. 1845, *p.* 933-934. The condition thereof was set forth as follows:

> If the defendant C. D. shall be condemned in this action at the suit of A. B. the plaintiff, he shall pay the costs and condemnation of the court, *or render himself into the custody of the sheriff of the said county for the same,* or if he fail so to do, that the said E. F. and G. H. [the sureties] will pay the costs and condemnation for him. (Emphasis supplied.)

[4]*Ca. re.* is also available in certain tort actions presently specified in *N. J. S. A.* 2A:15-41: (a) an outrageous battery or a mayhem; (b) a claim of damages for the misconduct or neglect of a public officer; (c) a willful or malicious act and the defendant is a nonresident or is about to remove from the state. Undoubtedly because the damages sought in such actions are unliquidated, the section provides that "the court shall hold the defendant to bail, in an amount which it thinks proper under the circumstances." Otherwise the procedure for arrest and bail is the same as in contract actions. Our conclusions with respect to arrest and bail in contract actions will have equal applicability to actions founded upon the three tort causes of action set forth above.

Another section provided that defendant might render himself, or be rendered, in discharge of bail, either before or within a limited time after judgment in the case. Rev. 1845, p. 936. The condition of the recognizance remained substantially the same, *N. J. S. A.* 2:27–89 and 90, until Title 2A, effective January 1, 1952, replaced Title 2 of the Revised Statutes, at which time the above sections were not reenacted. The one change that did occur prior to the Title 2A revision was an addition to section 90, which, in the bond condition itself, expressly afforded the sureties the alternative to render defendant into the custody of the sheriff in lieu of paying the judgment, even though they already had that right by virtue of the rendering section. *Emanuel v. McNeil,* 87 *N. J. L.* 499 (E. & A. 1915). The rendering section still exists in practically the same form. *N. J. S. A.* 2A:15–47 (formerly *N. J. S. A.* 2:27–100).

Mention ought to be made at this point of the function and place of *ca. sa.,* previously adverted to, in the procedural scheme. (There is only one passing reference to it in our rules. *R.* 4:59–1(a)). Essentially it is a body execution enabling a judgment creditor in specified types of actions to cause the arrest of the judgment debtor and his retention in custody until he either pays the judgment or secures his discharge as an insolvent debtor. 4 *N. J. Practice (Marsh and Fischler, Forms)* sec. 2053, *p.* 268–269 (rev. ed. 1960). Its availability since 1846, Rev. 1845, *p.* 322, has been limited at least in contract cases to those situations in which: (1) a *ca. re.* had issued and the order to hold to bail remained in force (whether or not defendant had been released from custody); or (2) a *ca. re.* had not issued but satisfactory proof was offered to the court after judgment that the writ could have issued initially; or (3) defendant had property in his possession or in the possession of another to his use, of the value of $50 or over, which he unlawfully refused to apply in payment of the judgment. The grounds remain the same today. *N. J. S. A.* 2A:17–78.

For our purposes, it may be noted that a *ca. sa.* issues automatically when a *ca. re.* had been issued initially and had not been quashed by successful attack on the underlying proofs before trial or by a finding by the judge at trial that the writ should not have issued. See *R.* 4:51–3 and 4:51–4; *Austrian v. Laubheim,* 78 *N. J. L.* 178 (Sup. Ct. 1909), *aff'd o. b.* 80 *N. J. L.* 459 (E. & A. 1910). If incarcerated under a *ca. sa.,* defendant's only means of securing his release is to pay the judgment or resort to the provisions relating to the discharge of insolvent debtors, which in effect amount to an assignment of all his real and personal property for the benefit of creditors, *i. e.* a compulsory surrender of the judgment debtor's property for the benefit of his creditors. *N. J. S. A.* 2A:20–1 to 11; *R.* 4:55; 4A *N. J. Practice, supra,* secs. 2961–2975, *p.* 97–111. See *Duro Co. Inc. v. Wishnevsky,* 126 *N. J. L.* 7 (Sup. Ct 1940). (We are not called upon in this case to pass upon the present day validity of the *ca. sa. See Carter v. Lynch,* 429 *F.* 2d 154 (4th Cir. 1970)).

The point of all this is that it would appear that the true purpose of a *ca. re.* was and is only to compel defendant's personal availability, if judgment goes against him in the action, for subjection to a subsequent *ca. sa.* This is made clear by the very language of the bond condition in effect until 1952, *N. J. S. A.* 2:27–90, as well as by the section permitting the surety to surrender defendant in discharge of bail before or after judgment, *N. J. S. A.* 2:27–100 (now *N. J. S. A.* 2A:15–47). The former bond condition meant no more than that the surety had to pay the judgment (up to the amount of the bond) only if he was physically unable to surrender defendant for incarceration under a *ca. sa.* which issued as of course following the entry of judgment for plaintiff.[5] The cases so indicate. *Truitt v. Landesman,* 108

[5]Our former statutes, *N. J. S. A.* 2:27–86 and 87 (not reenacted in Title 2A), provided, and our current rules likewise (*R.* 4:51–2(b)) provide further that, in lieu of furnishing bail, a defendant might make a cash deposit into court of the sum for which bail was ordered

*N. J. L.* 109 (E. & A. 1931); *Morgan v. Bowman,* 103 *N. J. L.* 542, 544 (Sup. Ct. 1927); *O'Donnell v. Mullen,* 8 *N. J. Misc.* 694, 151 *A.* 377 (Cir. Ct. 1930). *Cf. Simmons v. Kelly,* 39 *N. J. L.* 438 (Sup. Ct. 1877); *Atkinson v. Prine,* 46 *N. J. L.* 28 (Sup. Ct. 1884); *Emanuel v. McNeil, supra* (87 *N. J. L.* at 502); *Sholes v. Eisner,* 90 *N. J. L.* 151 (E. & A. 1916). The apparent popular misconception probably arose because the amount of the bond was specified to be related to the amount of the debt sued upon and the condition did speak, although alternatively, of payment of "the costs and condemnation."

In any event, the view we have expressed became certain beyond any possible doubt as a result of the adoption of the modern condition of a *ca. re.* bond, *viz.,*

> conditioned upon the defendant at all times rendering himself amenable to the orders and process of the court pending the action and to such process as shall be issued to compel the performance of the judgment therein and that he shall appear before the court or any officer thereof, when so required by court order.

Originally adopted as Rule 3:64–4(a) on January 1, 1952, when the former statutory condition (*N. J. S. A.* 2:27–90) was not reenacted in Title 2A, it became *R. R.* 4:66–4 in the rules revision of 1953 and is now found in *R.* 4:51–2(a) and (b) of the 1969 revision. The language itself makes no reference whatever to payment of a judgment. Moreover, it is the same condition as that prescribed since the adoption in 1871 of rule 187 of the former Court of Chancery for a release bond under a writ of *ne exeat* (see 2 *Kocher and Trier,* Chancery Practice and Precedents, sec. 1688 (1924);

---

and that, if judgment goes against him, the deposit should be applied to the satisfaction thereof. The reason for this disposition is that a deposit of the defendant's own money should be automatically available for the satisfaction of the judgment without the necessity of levying execution upon it. *Compare Neubauer v. Arians,* 98 *N. J. L.* 606 (Sup. Ct. 1923), in which cash of a *third party* deposited to secure the *appearance* of a defendant was, in effect, held not available for satisfaction of the subsequent judgment.

4 *N. J. Practice, supra,* sec. 1808, *p.* 141; 12A *N. J. Practice (Herr, Marriage, Divorce and Separation)* sec. 2672, *p.* 172–173 (3rd ed. Lodge 1963)). Indeed, *R.* 4:51 deals with *ca. re.* and *ne exeat* as a single subject. (We are not here concerned with when *ne exeat* is available, how it is to be ultilized, or whether, under our merged practice, it, *ca. re.* and *ca. sa.* may be used in either legal or equitable actions. See 1969 Rules Revision (Pressler ed.), *p.* 516; *Seiden v. Fishtein,* 44 *N. J. Super.* 370 (App. Div. 1957)). There can be no question that a *ne exeat* release bond is not a guarantee of payments imposed by the court's subsequent order or decree, but is only to compel defendant's physical appearance when required. *Foote v. Foote,* 102 *N. J. Eq.* 291 (E. & A. 1927). Recent *ca. re.* bond cases involving the condition in this form support this interpretation. *Iaria v. Public Service Mutual Insurance Co.,* 31 *N. J.* 386 (1960); *Yancey v. Lowe,* 47 *N. J. Super.* 86 (App. Div. 1957).

So construed, we see no reason to think that the current *ca. re.* release bond condition is constitutionally invalid from the substantive point of view. In fact, defendant does not contend that it is. The release bond with such a condition is analogous to a bail bond in a criminal prosecution. The legislature is entirely justified in classifying fraudulent debtors separately and authorizing civil arrest, at least when the undertaking to secure release is conditioned only upon the physical surrender of defendant when required. The trial court was in error in assuming that the bond condition guarantees payment of any subsequent judgment. The $25,000 bond required and furnished under our order, although its condition is phrased differently than the language prescribed by *R.* 4:51-2(a) and (b), has the same meaning, sufficiently complies with the rule and is entirely adequate to permit defendant's continued release from custody pending trial and final judgment in this action.

What we have said disposes of this appeal, but something should be said about the proper procedure, under modern constitutional concepts of procedural due process,

to be followed in future cases of this type. Civil arrest under a *ca. re.* is substantially analogous to arrest under a criminal complaint and a defendant should have all the same procedural rights and protections as if he were arrested on a criminal charge for the same fraud upon which the civil action and the *ca. re.* are based. See *In re Harris,* 69 *Cal.* 2d 486, 72 *Cal. Rptr.* 340, 446 *P.* 2d 148 (1968); *cf. Desmond v. Hachey,* 315 *F. Supp.* 328 (D. Me. 1970).

If a criminal complaint were made, a defendant would be taken at once before the judge who issued the warrant and advised of the nature of the charge and of his rights. *R.* 3:4–2. He would be released on bail conditioned only on his further appearance, *R.* 3:26–1(a), and he would be entitled to a later hearing as to probable cause for the complaint (assuming he had not been indicted meanwhile), at which the State would be required to produce sufficient evidence thereof to hold him for action of the grand jury. *R.* 3:4–3.

■■■■ By analogy, the procedure on *ca. re.* should hereafter be as follows: Upon arrest, after issuance of the writ on *ex parte* affidavits, defendant is to be brought immediately before the judge who issued the writ, or some other judge named therein, who will advise him of his rights to be released on bond and to bring on a motion on short notice under *R.* 4:51–3 to attack the basis for the issuance of the writ, at which plaintiff will have the burden of proof to establish the sufficiency of the evidence upon which the writ was issued. The judge will, at the initial appearance before him, fix the amount to which defendant shall be held to bail, with the condition prescribed in *R.* 4:51–2(a) and (b), which, as we have said, calls only for physical appearance when required. Plaintiff may, of course, be heard as to the amount of bail.[6]

---

[6]The judge may fix bail in an amount less than that which plaintiff claims to be due, despite the provision of *N. J. S. A.* 2A:15–42. The amount claimed to be due may well be too onerous a sum for a bond conditioned only upon physical appearance. We conceive that

The order of the Law Division holding defendant to bail in the amount of $50,000 is set aside. The order of this court providing for defendant's release from custody upon filing a $25,000 appearance bond is continued in force pending final judgment. The case is remanded to the Law Division for trial. No costs.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*Opposed*—None.

---

the amount of bail falls within the judicial rather than the legislative realm as a matter of practice and procedure, pursuant to *Const.* 1947, Art. VI, sec. II, par. 3. Analogies are found in the matter of a bond for stay of judgment on appeal, now covered by *R.* 2:9–5 and 2:9–6 and formerly the subject of statute, *N. J. S. A.* 2:27–369 to 375.2, and for release of attached property, now encompassed by *R.* 4:60–13 and previously prescribed by statute, *N. J. S. A.* 2:42–37 to 41. The amount of bail should be determined upon a consideration of all the circumstances, much as in a criminal case. Upon the same thesis, the bond furnished need not be in the now anachronistic sum of double the amount of the bail fixed, again despite the provision of *N. J. S. A.* 2A:15–43.