744 A.2d 209 (2000)
Ellen C. MARSHALL, Plaintiff-Respondent/Appellant,
v.
Warren MATTHEI, Defendant-Appellant/Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 10, 1999.
Decided January 26, 2000.
*211 Alpert Butler & Sanders, West Orange, for plaintiff-respondent (A-4385-98 and A-4386-98)/appellant (A-7026-98) (Clark E. Alpert, of counsel and, with David N. Butler and Matthew J. Rice, on the briefs).
Warren Matthei, Fairton, for defendant-appellant (A-4385-98 and A-4386-98)/respondent (A-7026-98) pro se.
Before Judges STERN, KESTIN and WEFING.
*210 The opinion of the court was delivered by KESTIN, J.A.D.
These three appeals are before us on leave granted. We consolidate them for the purposes of this opinion. All arise from the same civil matter filed in March 1993. The complaint in two counts embodied a claim for the value of professional services rendered. In February 1992, defendant, Warren D. Matthei, had retained plaintiff, Ellen C. Marshall, an attorney at law, to represent him in a Union County matrimonial proceeding. The amount claimed due in Marshall's suit was the $76,558.30 balance owing on her fee for services rendered through the divorce trial, until August 16, 1992, and in connection with a substitution of attorneys *212 thereafter. A default judgment was entered on April 20, 1995, for the amount claimed plus costs, including those connected with service of process in England where defendant was residing at the time. The total of the judgment was $85,553.87.
The judgment of divorce in the underlying matrimonial matter had been entered on November 12, 1992, following a twenty-three day trial. That judgment, inter alia, required Matthei to pay $50,000 per year toward the support of his three children, and $100,000 per year in alimony to his former spouse. On the basis of a determination that the proceeds of a wrongful termination claim by Matthei against his former employer might be subject to equitable distribution, the judgment required Matthei to keep his former spouse informed of the progress of negotiations, and enjoined him from disposing of the settlement proceeds until the court could make a definitive equitable distribution determination. A prior order had required Matthei to deposit any settlement proceeds with the court, subject to equitable distribution. Matthei appealed from the judgment of divorce, but that appeal was dismissed on March 10, 1994, on the former spouse's unopposed motion based on the argument that Matthei had "lied to the court, perjured himself, and defrauded the court and the [former spouse]" in respect of the settlement.
Settlement of the wrongful termination claim had occurred on April 15, 1993. In a July 22, 1993 certification filed with the court, however, Matthei denied that any settlement had transpired or that he had received any funds from his former employer on account of his claim.
In October 1993, Matthei moved to England. In January 1994, he stopped paying alimony and child support, and a bench warrant was issued on that basis. On August 12, 1996, Matthei was arrested on the bench warrant as he attempted to re-enter the United States. After a hearing on August 13, 1996, Judge Melvin S. Whitken entered an order for Matthei's incarceration by reason of his failure to discharge his child support and alimony obligations, pending his compliance or a determination that he lacked the ability to pay.
Judge Whitken held an ability-to-pay hearing on August 29 and September 5, 1996, and rendered a decision on that issue on September 13, 1996. He found that Matthei had received $2.74 million from the settlement after taxes, and was delinquent in his child support and alimony obligations in the sum of $296,350. The judge recounted in detail how Matthei had disposed of the proceeds of the settlement by expenditure, investment and payment over to his new wife,[1] and found that Matthei had the ability to pay the child support and alimony ordered. Based on R. 1:10-3, Matthei's continued incarceration was ordered pending payment of child support and alimony arrearages and the posting of $1.4 million to guarantee payment of the former spouse's equitable distribution claim regarding the settlement. Contempt of court charges were referred to the Union County Prosecutor's Office.
On September 23, 1996, Marshall filed an application for issuance of a writ of capias ad satisfaciendum (writ or ca. sa.) in respect of her judgment in this matter. At the hearing on the application, on October 10, 1996, Judge Kenneth R. Stein held Matthei to be collaterally estopped from relitigating the issues previously adjudicated by Judge Whitken. Judge Stein found that Matthei had conveyed his property with the intent to defraud creditors, and was refusing to apply available assets in payment of Marshall's judgment. See 2A:17-78; see also 2A:15-42. Accordingly, Judge Stein issued the writ.
*213 Matthei did not seek appellate review of either Judge Whitken's R. 1:10-3 order of September 13, 1996, or Judge Stein's issuance of the ca. sa. on October 10, 1996. Matthei made a number of pro se procedural applications to the trial court, including some seeking consolidation of the matrimonial matter and this action, or dismissal of the ca. sa. on entire controversy grounds. All these applications were denied.
Almost two years later, on August 7, 1998, Judge Whitken determined that continued incarceration in the matrimonial matter would be punitive rather than coercive because "continued incarceration is not going to produce" the approximate value of the matrimonial judgment. On August 28, 1998, Judge Whitken, inter alia, ordered Matthei's release contingent upon payment to his former spouse of $20,000, the estimated value of books which Matthei had acknowledged he owned. The order provided, however, that it would "not [operate to] release [Matthei] from incarceration imposed under any presently pending criminal matter or other civil matters, such as but not limited to, any capias bond."
Judge Whitken held another hearing on December 11, 1998. He then issued an order releasing Matthei from his R. 1:10-3 incarceration without any payment in the matrimonial matter on the basis that continued incarceration would be punitive rather than coercive. Matthei was remanded, however, "pursuant to any other detainers or other orders in other civil or criminal matters which still require his incarceration."
On December 17, 1998, Judge Stein held a hearing on Matthei's motion to dismiss the ca. sa. in this matter on the ground that it had no coercive effect and had become punitive in nature. Some testimony was taken from Matthei concerning his assets. Matthei argued that the ability-to-pay determination in the matrimonial matter should not have been given collateral estoppel effect, and that he should be able to show he did not fraudulently transfer his assets. He noted that his wife in England had recently divorced him and, as he had not seen the divorce judgment, "[t]hey could have taken everything away from me." He sought dismissal of the writ because "it was granted without any competent evidence," and he asked that the court hold another hearing.
On January 21, 1999, Judge Stein denied Matthei's motion to dismiss the ca. sa. He determined that the writ had not "ceased to serve its coercive purpose and ... become punitive[;]" noting also that Matthei remained incarcerated on criminal charges, and dismissal of the writ would not release Matthei from his incarceration regarding those charges. In A-4386-98, Matthei appeals from the order of January 21, 1999.
In September 1998, Matthei had filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. On December 2, 1998, that petition was dismissed without prejudice by consent "for failure to exhaust state court remedies." On December 4, 1998, Matthei filed a habeas corpus petition in the Superior Court of New Jersey. That petition was denied by Judge Stein in an order entered on February 16, 1999. In a letter opinion, Judge Stein held, pursuant to N.J.S.A. 2A:67-14, that Matthei was not entitled to habeas corpus relief because he
had not exhausted remedies available to him in the courts of this State nor has he shown that such remedies are or will be ineffective to protect his rights.
* * * *
Further, Mr. Matthei has not sought his release under N.J.S.A. 2A:20-1 et seq. by "in effect," assigning his property for the benefit of his creditors.
In A-4385-98, Matthei appeals from the order of February 16, 1999.
For the purposes of completing the factual picture to this juncture, we note the existence of a State criminal matter in *214 respect of which the record before us is incomplete. The Union County Prosecutor had filed criminal charges against Matthei in connection with the concealment of assets in the matrimonial matter. Matthei had been incarcerated on those charges as of early February 1997. Eventually, those charges were disposed of pursuant to plea agreement and, after pleading guilty to reduced charges, Matthei was, in early August 1999, released from jail on account of the state criminal proceedings. He continued to be held on the writ in this matter, however.
On August 5, 1999, Judge Stein, sua sponte upon learning that Matthei was no longer incarcerated on the criminal charges, held another hearing on the writ in this matter. When the judge endeavored to focus on Matthei's ability to pay and the question of whether the writ had exhausted its coercive potential and had become punitive instead, Matthei summarized his position by stating: "I have nothing further to say other than to further confirm I will not pay Ms. Marshall any money anymore th[a]n I paid my ex-wife the money and will remain incarcerated as long as that takes, and ... that's my firm conviction and view." Judge Stein noted there had been no showing "that there is no substantial likelihood that a commitment pursuant to the writ only will accomplish the purpose of the writ." The incarceration was continued, subject to Matthei's position in the matter.
Another hearing was held on August 17, 1999, also on the court's own motion. No testimony was taken, but the court heard argument from Matthei and from counsel on Marshall's behalf. At the conclusion of the hearing, Judge Stein rendered a decision orally. In reviewing the procedural history of the related matters bearing upon Matthei's incarceration, Judge Stein noted:
The history of Mr. Matthei's incarceration for the various reasons has clearly demonstrated his refusal to make any payment to obtain his release.
* * * *
I was advised that at some point during his incarceration on the criminal proceeding that there was a bail reduction with a cash alternative that would allow him to have been released, I think, on a payment of $4,000 or [$]5,000 in cash. I say all that because ... what that demonstrates is Mr. Matthei's refusal, if you will, to budge where arrest was at stake and is at stake in the present case, or where payment of less money tha[n] is sought here would have achieved his release.
The test applicable, of course, is the Court has to decide when the continued incarceration will be punitive rather than coercive. Now, Mr. Matthei says at times that he benefits from his stay in the various penal institutions or jails, but nonethelessand in a word leads us to believe that it is not punitive. But I believe the ... question is whether there is a likelihood that further confinement will serve any coercive purpose and cause him to pay the plaintiff or make assets available for payment.
... I am satisfied that there is no substantial likelihood that further confinement is going to serve any coercive purpose, and is going to cause Mr. Matthei either to pay Ms. Marshall or to make assets available for payment. All of this is not, of course, to ... condone Mr. Matthei's actions. I realize that there may be a difference in his feelings towards his wife and his family as opposed to his feelings toward Ms. Marshall, but I'm satisfied that my ruling is appropriate whether he holds some animus toward Ms. Marshall or whether... his feelings towards Ms. Marshall are less or more hostile then his feeling towards his wife and family.
And it appears to me at this point that given the history, that the further confinement is not going to cause a coercive purpose. And so I'm prepared to issue an order releasing Mr. Matthei.
*215 On Marshall's application, Judge Stein stayed the order releasing Matthei until the end of the following day to afford Marshall an opportunity to make an emergent application to us for a further stay and other relief. On August 18, 1999, we granted Marshall's motion for leave to appeal "on an emergent, expedited basis," and stayed Matthei's release pending further order. We also ordered production of the transcript of the August 17 proceeding on an expedited basis and required an answering brief and appendix from Matthei within seven days after receiving the transcript.[2] Marshall's appeal from the trial court's order discharging the ca. sa. and directing Matthei's release from incarceration is the third of these consolidated matters, under docket no. A-7026-98.
After our order of August 18, 1999 was entered, we received a series of letters[3] from Matthei declining to participate in this appeal and even requesting
an indeterminate stay of Judge Stein's Order of the 17th August, 1999 releasing defendant-respondent from incarceration pursuant to that court's writ of capias ad satisfaciendum, for a continuation of this Court's Order of the 18th August, 1999 as continued in the Order of this Court dated the 24th August, 1999 (filed the 26th August, 1999) and for an amendment of the Scheduling Order dated the 27th August, 1999 of the Hon. Sylvia B. Pressler, [P.J.A.D.] to reflect the foregoing.
Defendant-respondent may seek relief in the federal courts in the intervening time and undertakes hereby to keep informed this Court, trial court Judge Stein and plaintiff-appellant as to significant developments, if any, in this respect.
Also by way of completing the relevant factual context of the issues before us, we note information supplied by Marshall's counsel that on August 20, 1999, two days after our initial order in the matter, the United States Marshal filed a detainer for Matthei based upon a criminal complaint against him in the United States District Court for the Eastern District of Pennsylvania. We have since been advised that sometime in mid-December 1999, Matthei was moved, on an order to produce, to federal custody at Fort Dix, New Jersey, pending trial on that criminal complaint.
We deal first with the appeal in A-4385-98, the denial of Matthei's petition for a writ of habeas corpus. After reviewing the record in the light of the arguments advanced by the parties, we are in substantial agreement with the reasons Judge Stein articulated for denying the petition. The arguments Matthei makes in this regard are without merit, including his reliance in this civil matter on R. 3:22, which governs petitions for post-conviction relief, a remedy available in criminal matters. R. 2:11-3(e)(1)(E). Accordingly, in A-4385-98, we affirm.
To the extent the issues raised in Matthei's appeal from the trial court's denial of his motion to dismiss the ca. sa., A-4386-98, have any value independent of those raised in Marshall's appeal from the order granting Matthei's eventual release, A-7206-98, we likewise affirm. The factual issues before the court on Matthei's application for dismissal of the ca. sa. were essentially the same as those litigated in the matrimonial proceeding more than two years earlier, resulting in Matthei's incarceration for failure to discharge other obligations, i.e., for child support and alimony, which had also been reduced to judgment. Having failed to file a timely appeal from the issuance of that order in the matrimonial matter, Matthei was precluded from relitigating the underlying issues. Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 179, 624 A.2d 85 (App.Div. 1993) *216 (recognizing that "where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit" (quoting State v. Hale, 127 N.J.Super. 407, 410, 317 A.2d 731 (App.Div.1974))); see also Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991) (stating that once an issue is contested and decided, the resolution achieved must be respected by all courts of equal or lower authority); R. 2:4-1(a).
Matthei was precluded from relitigating those issues in this proceeding primarily by application of principles of collateral estoppel. In re Dawson, 136 N.J. 1, 20, 641 A.2d 1026 (1994) (stating that a party who had previously litigated the identical issue in a prior proceeding, and received a final judgment on the merits, is estopped from relitigating the issue in another proceeding, so long as the issue determined was essential to the determination in the prior proceeding). It is of no consequence that Judge Whitken, in stating his reasons for ordering Matthei's incarceration on the issues before him, did not specifically articulate a determination that Matthei had disposed of his property with the intent to defraud his matrimonial creditors. That was a conclusion which followed from the facts that had been developed and found, one which Judge Stein was well warranted in reaching in this matter. See Yeiser v. Rogers, 19 N.J. 284, 287, 116 A.2d 3 (1955) (quoting N.J.S.A. 25:2-13 (since repealed and superseded by N.J.S.A. 25:2-25), "Every `conveyance made and every obligation incurred with actual intent ... to hinder, delay or defraud... creditors is fraudulent[.]'"). Matthei's own statements, both before Judge Whitken and Judge Stein, were themselves adequate as a basis for the determination.
It was manifestly appropriate that collateral estoppel should be invoked against Matthei in respect of the factual issues which were embodied in Judge Whitken's findings, especially that Matthei had transferred or otherwise disposed of his assets in order to defeat his former spouse's alimony rights and equitable distribution claims as well as his children's rights to child support. The issues regarding disposition of Matthei's assets were identical, he had been represented by counsel in the proceeding before Judge Whitken, and he had had a full and fair opportunity to litigate all material questions. See Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 659-60, 684 A.2d 1385 (1996) (citing Restatement (Second) of Judgments §§ 27, 28 (1982)) (recognizing that New Jersey has adopted the rule of collateral estoppel as articulated in the Restatement, with the added requirement of exact identicality of issues); Zirger v. General Acc. Ins. Co., 144 N.J. 327, 338, 676 A.2d 1065 (1996) (referring to § 29 of the Restatement and noting that "mutuality of parties no longer is an essential condition of collateral estoppel," as long as "the party against whom collateral estoppel is to be invoked [was] ... in `privity' with a party in the first action"); United Rental Equipment Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977) (applying the draft principle which was adopted as § 29 of the Restatement (Second) of Judgments (1982): "A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify according him an opportunity to relitigate the issue.").
All the prerequisites for issuance and maintenance of the ca. sa. had been satisfied. See, e.g., Perlmutter v. DeRowe, 58 N.J. 5, 13-14, 274 A.2d 283 (1971) (discussing the "function and place of ca. sa."); Fidelis Factors Corp. v. Du Lane Hatchery, Ltd., 47 N.J.Super. 132, 139-40, 135 A.2d 550 (App.Div.1957). For these reasons, in A-4386-98, we affirm the trial court's January 21, 1999 denial of Matthei's motion to dismiss the writ, except to note, as we will develop below, that Matthei *217 had a right at the time to a plenary hearing on the question of whether his circumstances had changed since the earlier determination relative to his capacity to discharge his judgment obligation in this matter.
The only remaining question before us, posed in A-7026-98, is the correctness of the trial court's order discharging Matthei from incarceration on the ca. sa. on the ground that its coercive potential had been exhausted.
A capias ad satisfaciendum is a "body execution" that enables a judgment creditor in certain types of cases to cause the judgment debtor to be arrested until the debtor either pays the judgment or is discharged as insolvent. Perlmutter, supra, 58 N.J. at 14, 274 A.2d 283. Ca. sa. is an ancient writ. Id. at 11, 274 A.2d 283. The practice of imprisoning debtors was common both in England and in New Jersey during the State's infancy. Ibid. It was sharply curtailed, however, by N.J. Const. art. I, § 13, first adopted in 1844. Ibid. The writ essentially acts as a contempt-like device against the defendant who has the means to pay a judgment but refuses to do so. It is applied with due regard for the constitutional safeguard: "[n]o person shall be imprisoned for debt in any action, or any judgment founded upon contract, unless in cases of fraud[.]" N.J. Const. art. I, § 13.
The issuance of a ca. sa. in respect of a judgment founded on a contract is governed by N.J.S.A. 2A:17-78. Specifically, the statute provides:
A capias ad satisfaciendum shall not issue on a judgment founded upon contract, express or implied, except:
a. Where an order to hold the defendant to bail has been issued and remains in force; or
b. When due proof is made to the court, establishing:
1. The facts on which an order to hold to bail could issue under the provisions of section 2A:15-42 of this title; or
2. That defendant has rights or credits, money or effects in his own possession or the possession of some other person to his use, of the value of $50.00 or over, which he unlawfully refuses to apply in payment of the judgment against him.
Our review of the relevant case law has revealed a dearth of precedent concerning the standards governing implementation of ca. sa. writs. The standards for proceedings in relief of litigant's rights under R. 1:10-3, however, are plain. They, too, have contempt-like roots. We discern no reason why the same standards as have developed to govern civil contempts and proceedings in relief of litigants' rights should not apply, as appropriate, to ca. sa. commitments.
R. 1:10-3 was amended in 1998 and 1999 to express standards governing incarceration for violating litigants' rights with more precision than had previously been employed. The rule provides for relief to litigants permitting the commitment of "a judgment debtor [who] has assets that have been secreted or otherwise placed beyond the reach of execution." R. 1:10-3. The rule of Pierce v. Pierce, 122 N.J.Super. 359, 361, 300 A.2d 568 (App.Div.1973), continues to prevail. A finding that the debtor has the ability to discharge his ordered obligations is required. The underlying requirements of an R. 1:10-3 confinement of a debtor are therefore nearly identical to the statutory and decisional requirements for the issuance of a ca. sa. The close relationship between the purposes of and restrictions upon the two forms of confinement furnishes another justification for using the analytical framework of R. 1:10-3, as well as that pertaining to civil contempts, in evaluating the propriety of Judge Stein's disposition of the ca. sa. incarceration.
*218 The R. 1:10-3 test and the requirement for a Pierce finding were clearly satisfied by Judge Whitken's findings and by Judge Stein's October 10, 1996 conclusion based thereon that Matthei had conveyed his property with the intent to defraud creditors and was refusing to apply available assets in payment of Marshall's judgment. However, "[i]t is well-established that `[t]he legal justification for commitment for civil contempt is to secure compliance. Once it appears that the commitment has lost its coercive power, the legal justification for it ends and further confinement cannot be tolerated.'" In re Acceturo, 242 N.J.Super. 281, 287, 576 A.2d 900 (App.Div.1990) (quoting Catena v. Seidl, 65 N.J. 257, 262, 321 A.2d 225 (1974) (Catena I)). The test for whether commitment should be continued is whether there is a "substantial likelihood that [it]... would accomplish the purpose of the order upon which the commitment was based." Catena I, supra, 65 N.J. at 263, 321 A.2d 225. "No hard and fast rule can be formulated and no fixed period of time set." Ibid. "[T]he critical question is whether or not further confinement will serve any coercive purpose." Catena v. Seidl, 68 N.J. 224, 229, 343 A.2d 744 (1975) (Catena III). The burden of showing that the incarceration has lost its coercive effect and has become punitive is on the party who is incarcerated. Acceturo, supra, 242 N.J.Super. at 287, 576 A.2d 900; Catena I, supra, 65 N.J. at 263, 321 A.2d 225.
Because there is no definitive time frame to determine when the incarceration has become punitive rather than coercive, Acceturo, supra, 242 N.J.Super. at 287-88, 576 A.2d 900, to the extent it is used to secure compliance with a court order, incarceration "where indicated, should not be limited or delimited by a term, but should depend for its length on the continuation of noncompliance." Pierce, supra, 122 N.J.Super. at 360, 300 A.2d 568. Indeed, where a person who has the ability to pay is incarcerated on a ca. sa., or on an order in relief of litigant's rights, as with a civil contempt, "the key to the jail is in the prisoner's pocket, that key being compliance with the order." Ibid.; see also In re Daniels, 118 N.J. 51, 59-60, 570 A.2d 416 (1990) (citing Hicks v. Feiock, 485 U.S. 624, 646, 108 S.Ct. 1423, 1437, 99 L.Ed.2d 721, 741 (1988)).
In determining whether incarceration is punitive rather than coercive, a court must bear in mind a party's willful behavior. Acceturo, supra, 242 N.J.Super. at 288, 576 A.2d 900. "It is to counter such willful conduct that courts have inherent power to incarcerate to enforce compliance with their lawful orders[.]" Ibid. (citing Spallone v. United States, 493 U.S. 265, 274-75, 110 S.Ct. 625, 631-32, 107 L.Ed.2d 644, 655 (1990)). The power would come to nothing if a defiant judgment debtor were able to secure his release by boldly and continuously asserting that he will never discharge his judgment-based obligations notwithstanding a finding that he has the capacity to do so. See ibid. We are further persuaded of the correctness of this view because of an alternative independently available to a debtor who genuinely lacks the ability to pay a civil judgment of the type at issue here: discharge in bankruptcy. See Perlmutter, supra, 58 N.J. at 14, 274 A.2d 283. A civil contemnor who eventually gains his release after continuous refusal to testify has had no such independent means for neutralizing the obligation upon which the incarceration was based.
The application of this civil-contempt and relief-to-litigant's-rights confinement analysis to the matter before us convinces us that Matthei was not entitled to release from the ca. sa. incarceration which Judge Stein ordered, based solely on his refusal to pay. We do hold, however, that Matthei was entitled to a full evidentiary hearing on whether the material circumstances upon which the ca. sa. was based had changed in the interim to the extent that full or partial satisfaction of his *219 judgment obligations was no longer possible.
An individual committed for civil contempt has the right to periodic review so that it can be determined whether circumstances have changed. Acceturo, supra, 242 N.J.Super. at 288-89, 576 A.2d 900. The burden of proving the change of circumstances is upon the individual seeking release. In order to maintain logical parallels between ca. sa. incarcerations and those for civil contempt, we hold also that an evidentiary hearing must be held no less frequently than 18 months after the last hearing, the maximum term that may be imposed for criminal contempt under N.J.S.A. 2C:29-9a and 2C:43-6a(4), see Acceturo, supra, 242 N.J.Super. at 288-89, 576 A.2d 900, or sooner upon a prima facie showing by the party subject to the order that circumstances have changed. The purpose of the hearing is to determine whether the finances of the incarcerated party have diminished to so material a degree as to render it impossible, as a practical matter, for him to discharge his judgment obligations in whole or in part. It is not the attitude of the party that controls, but the availability of his material means.
Where the court determines that a petition for release may have merit and requires a hearing, the matter should be promptly decided. See id. at 290, 576 A.2d 900. But release cannot be granted "without affording the [adversary] the opportunity at a hearing to test the veracity and credibility of the proofs offered in support of the petition[.]" Ibid. We, of course, have no basis for addressing at this time the adequacy of any grounds that may be offered in support of a petition for release, or any other issues which may arise at that time, including the sufficiency of a proffer that Matthei lacks the resources to pay the judgment because of a transfer of funds that was wrongful. See N.J.S.A. 2A:17-78b.2.
The August 17, 1999 order of the trial court releasing Matthei from incarceration on the ca. sa., on appeal in A-7026-98, is accordingly reversed. The matter is remanded for a plenary hearing on the question whether the ca. sa. incarceration should continue based on the standards of N.J.S.A. 2A:17-78; i.e., a determination whether intervening circumstances since the fall of 1996 have adversely affected Matthei's capacity to discharge his judgment obligations in whole or in part.
To summarize, in A-4385-98 and A-4386-98, we affirm. In A-7026-98, we reverse and remand.
NOTES
[1] On December 14, 1995, Matthei had entered into a prenuptial agreement with a British citizen, transferring all his assets to her, including the proceeds of the settlement. They were married soon thereafter and were divorced in late 1998.
[2] A modified "accelerated scheduling order" was entered by the Clerk on August 27, 1999.
[3] Some of these communications were, in terms employed in R. 4:6-4(b), highly "scandalous, impertinent [and] ... abusive of the court or another person."