755 A.2d 656 (2000)
333 N.J. Super. 345
Edith ANYANWU, Plaintiff-Respondent,
v.
Longy ANYANWU, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 5, 2000.
Remanded April 14, 2000.
Resubmitted after Limited Remand July 20, 2000.
Decided August 4, 2000.
Charles C. Chikezie and Sebastian O. Ibezim, Jr., East Orange, for appellant (Mr. Chikezie, on the brief).
No brief was filed on behalf of respondent.
Before Judges STERN, KESTIN and STEINBERG.
KESTIN, J.A.D.
This case has been before us several times previously. When we addressed the issues on the last occasion, pursuant to our grant of defendant's motion for leave to appeal from the trial court's order of June 8, 1999, plaintiff's then-current position regarding defendant's non-compliance with a prior order was unknown, and our efforts, administratively, to determine her stance were unavailing. In an opinion filed on April 14, 2000, published at 333 N.J.Super. 231, 755 A.2d 593, we ordered a limited remand to the trial courtfor a second time in this appealfor a hearing within thirty days to determine plaintiff's position. We provided: "If during the remand proceedings, defendant shows compliance with the extant order of the Family Part, or plaintiff does not seek its continued enforcement, defendant shall be released immediately." In that opinion, we recited the factual and procedural background of the matter in some detail; we will not rehearse it here.
In a subsequent letter, Judge Ahto (to whom the matter had been reassigned after Judge Friend's retirement) sought more specific instructions regarding the scope of the limited remand. We responded, *657 apparently as the parties were about to appear before the trial court.
Judge Ahto reported by letter of April 25, 2000. He advised us that the parties had appeared with counsel on the previous day. After hearing from plaintiff, he was "satisfied that she is still desirous of pursuing enforcement of Judge Friend's prior orders." Judge Ahto wrote further:
That being so, the ultimate issue of coercive/punitive is before you.
As an aside, I did make the determination that the defendant offered no additional information that would manifest compliance with the extant order. It is my understanding that what he has done has already been revealed to the Appellate Division.
As a further aside, there was no newly developed matter presented for me to monitor in order to make a determination whether incarceration continues to be warranted.
Based on the totality of the above, it is my conclusion that the matter squarely rests with the Appellate Division to make the ultimate decision it was considering before the remand.
On May 8, 2000, we wrote defendant's attorney, Charles Chinedum Chikezie (who continued to represent defendant in the appeal pursuant to our order of October 8, 1999, after leave to appeal had been granted), noting: "[w]e are aware of no application to amend the notice of appeal or of any request for preparation of the transcript of the proceedings of April 24, 2000." We asked him to advise us at an early date of his intentions in this regard or whether he "desire[d] to proceed on the record made prior to the granting of leave to appeal and the [earlier] remand opinion of Judge Friend." When, by mid-June, we had not heard in response to this inquiry we instructed the Clerk's office to make another effort to communicate with Mr. Chikezie.
In the meantime, on June 5, 2000, we received a handwritten letter from defendant himself dated May 31, 2000. It purported to attach a "recent development in the form of a letter written to court by the U.S. Embassy in Nigeria .... at the behest of Ms. Porro, counsel for plaintiff", and described the contents of the attached letter. The letter referred to, however, was not a "recent" document. It bore a date of May 11, 1999, and was stamped as having been "received" by Judge Friend on May 24, 1999. Notwithstanding that date of receipt, as far as we can tell, the letter was never formally introduced as part of the record; and it was not referred to by Judge Friend in the last proceeding before him, on June 8, 1999, which generated the disposition from which this appeal has been taken: an order based upon an oral ruling denying defendant's motion for release from incarceration, and a supplemental letter determination dated August 25, 1999after our initial limited remandthat incarceration continued to be coercive and had not become punitive.
Defendant's letter of June 5, 2000 also contained the following:
Additionally, I will greatly appreciate the court informing me of the impact on the effectiveness of my defense and the fairness meted to me on the matter if in a situation where: counsels do not want to represent a defendant in a matter, and therefore requested discharge and were so granted, but were however asked by higher court to represent the defendant on the appellate application; if the said counsels are hesitant to write necessary briefs to expose the facts of the matter; do not write any evidence adducing letters such as the one written by counsel for the plaintiff referred to in the attached letter; do not do anything to otherwise gather existing evidence to exonerate their client; do not furnish their client with copies of critical correspondence from court or parties and do not respond to them, not even when such copies have been severally requested; do not update client with status information such as critical report from *658 trial court and parties; do not inform client of court schedules, etc. If defendant does not respond accordingly and appropriately to issues raised by court or parties, having been left in the dark in regards to the activities on the matter while incarcerated, how, or to what extent will this serious impairment impact the exposure of court to truth, the quality of justice and fairness meted to such a defendant?
Mr. Chikezie's response to our inquiry came in a letter dated July 3, 2000. He wrote in essential part:
... I apologize for my untimely response to your correspondence of May 8, 2000. I shall most likely be filing an application to amend my notice of appeal once I receive a response to my letter of June 29, 2000 to Hon. Salem Vincent Ahto, P.J.F.P., requesting a copy of a report, on the within matter, that was conducted on the Court's behalf by an American Embassy official in Nigeria and a copy of the transcript of April 24, 2000 proceeding from the Court.
Your Honor, it is my understanding that a copy of the April 24, 2000 proceeding has already been provided to the Appellate Division by Hon. Ahto's Chambers.
The letter had an attachment, a copy of a June 29, 2000 letter from Mr. Chikezie to Judge Ahto, which read, in essential part:
[C]ould you please have your Secretary provide us a copy of any and all report(s) that have been conducted on the Court's behalf, on this matter, by any individual or agency, but particularly by the American Embassy official(s) in Nigeria.
Since we believe that a certain report that Your Honor referred to during the April 24, 2000 proceeding bolsters our claim that Dr. Anyanwu has done all that he can possibly do from incarceration regarding complying with the Contempt order, I strongly believe that this report is critical to the amendment to my notice of appeal.
Your Honor, it is my understanding that a copy of the April 24, 2000 proceeding has been provided to the Appellate Division by Your Honor's Chambers. In light of the fact that I am not being paid for my involvement in this time intensive case, I respectfully request a copy of the April 24, 2000 transcript from the Court.
A representative of the trial court responded to Mr. Chikezie's letter on July 5, 2000, as follows:
Your client, Mr. Anyanwu, provided a signed authorization for a representative of the Morris County Jail to receive documents from his file on May 24, 2000. The requested documents, including the letter to the Court from the United States Embassy in Nigeria, were provided to Mr. Anyanwu via sealed inter-office mail on May 25, 2000. I have enclosed for your reference a copy of the package which was forwarded to him.
A review of the file indicates that no transcript of the April 24, 2000 proceeding has been completed or forwarded to the Appellate Division by Chambers. If you would like to obtain a transcript from that date, arrangements may be made....
The "package" forwarded directly to defendant (on May 25, 2000) was in response to his May 24, 2000, request for:
1. Letter to court from U.S. Embassy in Nigeria
2. Judge Ahto's report to the Appellate Div.
3. Responses from parties to Judge Ahto's report
4. Any other recent correspondences on the matter
To date, despite Mr. Chikezie's indication, we have not received an amended notice of appeal or any application for leave to file one. Presumably, the need to file an amended notice of appeal would arise from a sense that Judge Ahto, in arriving at the determinations noted in his *659 April 25, 2000 letter, made substantive findings and reached conclusions not previously articulated by the trial court or as a result of considering matter that was not previously before the trial court. Judge Ahto's letter and the limited scope of the remand proceeding before him suggest the contrary, however. Although Judge Ahto was not restricted in his authority from ordering defendant's release if he concluded that defendant had complied with the extant order on which incarceration was predicated, or had no capacity to do so, no such determination was made. Nor did the judge refer to anything newly proffered to persuade him to do so.
Nevertheless, out of abundant caution because of our substantial regard for defendant's liberty interests, we recently ordered the transcript of the April 24 proceeding and have determined to consider the notice of appeal to have been amended to whatever extent is necessary to subsume any newly introduced issues. We are free to do so because of plaintiff's non-participation in the appeal.
The transcript reveals that, apart from the U.S. Embassy official's May 11, 1999 letter, Judge Ahto had nothing before him that had not been previously considered by Judge Friend. We note that, although Judge Ahto discussed the letter in his colloquy with counsel and defendant, the findings contained in the judge's April 25 letter report to us include no reference to the Embassy official's letter, either directly or indirectly.
We are reluctant to delay resolution of this appeal any further. The parties are entitled to a decision and essential repose on the precise issues before us. Clearly, if there have been any newly occurring developments since Judge Friend's last determinations that bear upon the focal issuedefendant's discharge of his court-ordered obligations or his capacity to do soor any other pertinent questions that have not been adequately addressed by the trial court or us in this phase of the matter, defendant may not be precluded from raising them in a new application to the trial court. See Marshall v. Matthei, 327 N.J.Super. 512, 528-29, 744 A.2d 209 (App.Div.2000)(discussing the right of an individual so incarcerated to periodic review, or to review in the interim upon a threshold showing of a change in material circumstances).
By our order, defendant's brief in support of his motion for leave to appeal has been received as the merits brief in the matter. No brief has been filed on plaintiff's behalf. Defendant raises essentially two arguments on appeal: that the trial court erred in denying his motion for release from incarceration, and that Judge Friend should have recused himself from consideration of the current application and should be disqualified from continuing to preside over the matter.
We regard the arguments concerning recusal to lack merit. There is no basis in the record from which we could reasonably conclude that defendant has received anything but a fair review and balanced consideration of matter he has presented to excuse his failure to produce the parties' children (later, the surviving child) as ordered by Judge Schaeffer on an earlier application. Judge Friend's firmness, unfortunately and unfairly perceived by defendant as bias, was appropriate. As in all situations involving relief to litigants' rights, the trial court judge reviewing the matter as it developed was obliged to balance the interests of the party for whose benefit the order issued against those of the party-obligor, without losing sight of the legal system's interest in the integrity of judicial orders. As for the future, the argument that Judge Friend should be precluded from further consideration has been rendered moot by his retirement.
On the substantive issue before us, we discern nothing in the record to suggest that Judge Friend mistakenly applied his discretion in determining that defendant continued to be in violation of the order to produce the children, i.e., that, *660 failing compliance with the terms of the several orders entered by the trial court, he had not persuaded the court that compliance was beyond his capacity. We reach this conclusion on several related bases.
First, our observations in Marshall, supra, 327 N.J.Super. at 526-27, 744 A.2d 209, concerning the similarities between capias ad satisfaciendum (ca.sa.), civil contempt, and relief to litigants' rightsthere framed in the context of a ca. sa. commitment occasioned by the defendant's refusal to answer for a money judgmentapply as well in any matter such as this where the order is for performance of a personal duty. The fundamental qualities of this defendant's court-ordered obligations are identical with those mandated in Marshall.
Secondly, defendant has not only failed to demonstrate his incapacity to comply with the ultimate obligation, the return of the surviving child, but he has also failed to take specific steps ordered by the trial courtat our direction in a prior appealdesigned to achieve that objective, and has not shown an inability to perform even those discrete responsibilities, let alone the ultimate obligation.
Finally, in the proceeding which generated the order from which this appeal is taken, the facts found by the trial court and the fair inferences drawn therefrom were well supported by the evidentiary record, and thus are binding on appeal. See Cesare v. Cesare, 154 N.J. 394, 411-13, 713 A.2d 390 (1998).
The existing record reveals that defendant has made no concrete efforts to come into compliance with the outstanding order; and, has undertaken none of the prescribed communications or other steps designed to achieve the ultimate objective. Those communications he has engaged in have, by and large, been limited to complaints about the way in which our judicial system had dealt with him. He is certainly free to complain without suffering any sanction, but he is not free to disobey the underlying orders.
The line of civil contempt cases in which persons have been incarcerated for refusal to testify before grand juries and other investigative bodiesregardless of whether the persons were eventually released by the reviewing court, see, e.g., Catena v. Seidl, 68 N.J. 224, 228-29, 343 A.2d 744 (1975), or remained incarcerated, see, e.g., In re Zicarelli, 55 N.J. 249, 271-72, 261 A.2d 129 (1970), aff'd, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); In re Acceturo, 242 N.J.Super. 281, 284-86, 576 A.2d 900 (App.Div.), certif. denied, 127 N.J. 324, 604 A.2d 599 (1990); In re Manna, 124 N.J.Super. 428, 438-39, 307 A.2d 619 (App.Div.), certif. denied, 64 N.J. 158, 313 A.2d 218 (1973)have one significant characteristic distinguishing them from cases like this one and Marshall. In the instances where only testimony was required, the adversary was the State and the opposing interest to be vindicated was that of the public's. The courts could more easily determine that the public interest would no longer be served by continued incarceration than we or the trial court can decide for the plaintiff in this matter that her interests no longer require defendant's compliance with the terms of the underlying order. Cf. Morris v. Morris, 263 N.J.Super. 237, 244, 622 A.2d 909 (App.Div.1993) (balancing, in the context of an incarceration for failure to pay, the right of the obligee to enforce an alimony agreement incorporated into a judgment of divorce against the obliger's ability to pay); Lathrop v. Lathrop, 57 N.J.Super. 532, 536-40, 155 A.2d 106 (App.Div.1959) (discussing the Chancery Division's flexibility in insuring that parties adhere to a visitation order). As we have opined in similar contexts:
In determining whether incarceration is punitive rather than coercive, a court must bear in mind a party's willful behavior. Acceturo, supra, 242 N.J.Super. at 288, 576 A.2d 900. "It is to counter such willful conduct that courts *661 have inherent power to incarcerate to enforce compliance with their lawful orders[.]" Ibid. (citing Spallone v. United States, 493 U.S. 265, 274-75, 110 S.Ct. 625, 631-32, 107 L. Ed.2d 644, 655 (1990)). The power would come to nothing if a defiant judgment debtor were able to secure his judgment-based obligations notwithstanding a finding that he has the capacity to do so. See ibid.
[Marshall, supra, 327 N.J.Super. at 528, 744 A.2d 209.]
And, further:
Civil contempt is employed as a coercive sanction to compel the witness to do what the law made it his duty to do. Penfield Co. v. S.E.C., 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117, 1123 (1947). Civil contempt is designed to provide a litigant with a remedy against his opponent's refusal to do what he ought to do.
[In re Manna, supra, 124 N.J.Super. at 438, 307 A.2d 619.]
In every sense of the term, as the trial court has found, this defendant is a "resistive suitor". See Federbush v. Federbush, 5 N.J.Super. 107, 112, 68 A.2d 473 (App.Div.1949) ("Incarceration ... is part of equitable process to enforce judgment, but it is available only against a resistive suitor capable of meeting the judgment. His ability to satisfy the judgment is his means of freedom."); see also Sgambati v. Sgambati, 242 N.J.Super. 688, 694, 577 A.2d 1328 (Ch.Div.1990). The trial court has found that defendant "possessed the ... means but not the willingness to meet the order." Biddle v. Biddle, 150 N.J.Super. 185, 191, 375 A.2d 285 (Ch.Div.1977); see also Busch v. Busch, 91 N.J.Super. 281, 285, 219 A.2d 899 (Ch.Div.1966). Because that ultimate determination is reasonably based on findings supported by substantial evidence in the record, we may not and will not reject it. See Cesare, supra, 154 N.J. at 411-13, 713 A.2d 390; Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988); Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). Defendant must accept the consequences of his own choices to defy the trial court's orders rather than comply with their terms.
As we have indicated, defendant has the right to apply to the trial court for another review of his situation upon a prima facie showing that there has been some material change in the circumstances bearing upon his ability to discharge his ordered obligations. In any event, he is entitled to automatic review as the trial court sees fit, but in no event beyond eighteen months since the last review. See Marshall, supra, 327 N.J.Super. at 529, 744 A.2d 209. Because the record upon which the last denial was based did not include consideration of the May 11, 1999 U.S. Embassy official's letter, and because Judge Ahto on the last limited remand made no specific findings founded upon that letter, defendant is not in any way constrained from making use of that letter as part of his basis for seeking a new review.
The June 8, 1999 order of the trial court is affirmed.