**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3824-24

R.J.B.,[1]

    Plaintiff-Respondent,

v.

M.R.G.,

    Defendant-Appellant.

_____

Submitted May 19, 2026 – Decided May 29, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-0876-23.

M.R.G., self-represented appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the child in these proceedings. R. 1:38-3(d).

In this non-dissolution matter, defendant M.R.G. appeals from a June 26, 2025 Family Part order addressing make-up parenting time and denying her application to modify the parties' custody and parenting time order. We affirm.

I.

We recite only those facts and procedural history relevant to this appeal. The parties were never married. They have a daughter in common, H.B., born in June 2011, in Pennsylvania. On July 15, 2016, defendant filed a custody complaint in the First Judicial District of Pennsylvania against plaintiff R.J.B. Following contentious proceedings, plaintiff was ultimately granted primary physical custody of H.B., and defendant was granted partial physical custody.

In 2019, plaintiff moved to New Jersey with H.B. On February 21, 2023, the Pennsylvania court entered an order designating plaintiff as parent of primary residence (PPR) and defendant as parent of alternate residence (PAR). Defendant was granted parenting time every other weekend from Saturday at 9:00 a.m. until Sunday at 5:00 p.m., with drop-offs occurring at her residence and the local municipal building. On May 16, 2023, the Pennsylvania court entered an order granting defendant temporary sole custody until plaintiff's ten-day sentence for failing to appear for a hearing was completed. Further,

2

defendant's parenting time was modified to every weekend from Friday after school until Sunday at 5:00 p.m.

On July 19, 2023, the Pennsylvania court entered a final custody and transfer order relinquishing jurisdiction to this State based on plaintiff and H.B.'s residence in Burlington County for approximately five years. Defendant continued to reside in Pennsylvania. The order continued plaintiff as PPR and defendant as PAR but modified the parenting time schedule to provide defendant with partial physical custody on alternating weekends, beginning on Friday, July 7, 2023, with the exchange taking place at 7:00 p.m. at a police station in Pennsylvania, and returning H.B. after dinner on Sunday at the same location. The Pennsylvania court ordered defendant to enroll in anger management and parenting classes. The order also set forth a holiday and vacation schedule.

On December 18, 2023, plaintiff filed a motion to transfer jurisdiction to New Jersey notwithstanding the July 19, 2023 Pennsylvania order. On January 6, 2024, defendant filed an application in the Family Part for modification of the prior orders entered in Pennsylvania. Defendant argued plaintiff was not compliant because he failed to enroll H.B. in individual and family therapy, was not allowing communication between H.B. and herself, and failed to respond to emails.

On January 15, 2024, defendant filed an emergent application seeking to have New Jersey law enforcement assist with parenting time transfers. On February 6, 2024, the parties appeared in the Burlington Family Part. The judge registered the July 19, 2023 Pennsylvania order but denied defendant's application for modification on the basis she did not provide proof of completion of anger management classes.

On February 12, 2024, plaintiff filed an application for modification alleging defendant had engaged in "harassing behavior," caused scenes at the police station during exchanges, and "lied" to the court. Plaintiff claimed defendant called the township in New Jersey where he and H.B. reside to conduct wellness checks on him, and she was stalking his home. Plaintiff requested the court to monitor defendant's calls with H.B. and suspend parenting time until defendant completed anger management and mental health classes.

On February 20, 2024, defendant filed an application for modification contending plaintiff barred her communication with H.B., did not bring H.B. to the court-ordered drop-off/pick-up location, and did not allow the child to participate in family therapy. Defendant sought sanctions against plaintiff for his failure to drop off H.B. for parenting time on February 9 and 16, 2024.

At the March 28, 2024 hearing, the prior judge issued an order reducing defendant's parenting time with H.B. to a sole daytime visit on Sunday from 10:00 a.m. to 4:00 p.m., and a phone call every Wednesday at 7:30 p.m. Transfers were to continue at the designated police station in Pennsylvania, and the judge reiterated that defendant had to complete an anger management program. On Sunday, March 31, 2024, plaintiff filed an emergent application stating H.B. was not returned after defendant's parenting time ended. Plaintiff called his local police station alleging interference with custody. Both parties then retained counsel.

On April 1, 2024, plaintiff's counsel filed an emergent application seeking to suspend defendant's parenting time, require her to undergo a psychological evaluation to address issues that might interfere with her ability to care for H.B., and for counsel fees. In her counsel's certification in response to plaintiff's emergent application, counsel stated that on March 31, 2024, plaintiff did not show up for pick-up at 4:00 p.m., defendant and H.B. waited until 4:30 p.m., and then left to visit a friend. The certification also stated defendant spoke with the Pennsylvania police, who were actively on the phone with plaintiff. Eventually, plaintiff picked up H.B. at defendant's home.

The parties continued to file applications for modification. On January 15, 2025, defendant's counsel filed an application to modify parenting time and to enforce litigant's rights. Defendant contended plaintiff continued to withhold H.B. and that she was deprived "of a least forty weekend overnights and eleven Sunday visits." Defendant requested fifty-one overnights as compensatory parenting time and two overnight visits "every other weekend." Defendant also claimed plaintiff failed to take H.B. to her therapy visits on multiple occasions, resulting in H.B. being dismissed as a patient.

On January 23, 2025, the judge conducted a hearing and granted defendant make-up parenting time consisting of the first three Saturdays in February from 10:00 a.m. to 4:00 p.m. On February 18, 2025, plaintiff filed an emergent application alleging defendant hit H.B. in the mouth and withheld her over her scheduled parenting time.

On April 4, 2025, defendant filed an application for modification seeking to hold plaintiff in contempt of court and for an award of counsel fees based on his "contemptuous behavior and disobedience" of court orders. According to defendant, plaintiff was withholding contact between herself and H.B., and he is a "no call no show at every scheduled drop[-]off date." Defendant contended plaintiff did not answer "at least [nine] emails" since February, and interfered

with custody, citing N.J.S.A. 2C:13-4. Defendant also sought to remove her counsel from the case.

On May 5, 2025, defendant filed another application seeking to relocate H.B. to her residence in Pennsylvania. Defendant alleged plaintiff did not allow her parenting time on April 29, 2025, and refused to comply with court orders regarding therapy.

On June 26, 2025, the judge conducted a hearing. The judge denied defendant's application for modification and enforcement. Defendant argued plaintiff missed a Sunday parenting time transfer on June 17, 2025, which was Father's Day, and had not permitted her to have telephone calls on Wednesdays at 7:30 p.m., as ordered.

Following argument, the judge attempted to grant defendant make-up parenting time on a Saturday or Monday but could not due to scheduling issues raised by her on Saturdays, due to Shabbos,[2] and work obligations on Mondays. Thus, the judge ruled going forward, there would be "strict compliance" with Sunday parenting time and "no Sundays are going to be missed." The judge decided to "chalk this up to a misunderstanding as to Father's Day" and stated

---

[2] "Shabbos" is the pronunciation of the Hebrew word "Shabbat," which refers to the Jewish day of rest on the seventh day of the week, beginning at sunset on Friday and lasting until nightfall on Saturday.

A-3824-24

"[p]laintiff is to understand that it's going to be every Sunday period." The judge held "the phone calls are strictly enforced" as well. The judge denied defendant's application to modify the current custody and parenting time order because she failed to establish a change of circumstances in a "material way," citing Bisbing v. Bisbing, 230 N.J. 309 (2017). A memorializing order was entered. This appeal followed.

Defendant presents the following arguments for our consideration:

(1) the judge deprived defendant of her constitutional right to due process by denying a meaningful opportunity to be heard;

(2) the judge failed to enforce existing custody orders and mischaracterized plaintiff's repeated noncompliance as a "misunderstanding" in violation of her due process rights;

(3) the judge violated her First Amendment and New Jersey Constitutional rights to the free exercise of religion;

(4) the judge erred by failing to address plaintiff's pattern of noncompliance and harassment, resulting in a miscarriage of justice;

(5) the judge violated her fundamental parental rights under the Fourteenth Amendment and Article I, Paragraph I, of the New Jersey Constitution.

## II.

In approaching the issues raised by defendant in her appeal, we observe that our standard of review requires deference to judge-made fact findings supported by substantial credible evidence. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). That standard is fully applicable here. We are also satisfied the judge applied correct legal principles, and finding no abuse of discretion in the determination of the issues raised by defendant, we affirm.

Whether a litigant received a meaningful opportunity to be heard is a question of law reviewed de novo. See Gere v. Louis, 209 N.J. 486, 499 (2012) (stating questions of law are reviewed de novo). When a party fails to comply with a court order, the trial court has the discretion to order a variety of sanctions. Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 344-345 (1984). "We review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018).

## III.

### A.

We reject defendant's argument that she was deprived of due process and a right to be heard under the Fourteenth Amendment of the United States

Constitution and Article I, Paragraph I of the New Jersey Constitution. Defendant maintains that during the hearings, she was not permitted to present critical information, relevant background, or introduce evidence to allow the judge to make an informed ruling. At the June 26, 2025 hearing, defendant contends the judge repeatedly interrupted her, dismissed her concerns for consistent in-person parenting time as being from "a long time ago," and refused to allow her to present the full scope of issues raised in her application. By way of example, defendant asserts she attempted to show the judge a text message disproving plaintiff's claim regarding a missed exchange, but the judge stated documents were "needed" and refused to look at her phone. Defendant alleges the judge's actions demonstrate her application had not been fully read or considered and that the judge did not understand the procedural history of this matter.

Due process is a flexible concept that "depends on the particular circumstances" of the case. Doe v. Poritz, 142 N.J. 1, 106 (1995). It requires adequate notice and the opportunity to be heard, Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 403 (App. Div. 2008), which is further understood as an opportunity to be heard at a meaningful time and in a meaningful manner, Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76,

84 (App. Div. 2001). We agree "[e]agerness to move cases must defer to our paramount duty to administer justice in the individual case[,]" <u>Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co.</u>, 206 N.J. Super. 405, 406 (App. Div. 1986), and the "rights of the parties to a full and fair hearing are paramount," <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 481 (2011), but judges are accorded "wide discretion in exercising control over their courtrooms[.]" <u>Martin v. Newark Pub. Schs.</u>, 461 N.J. Super. 330, 340 (App. Div. 2019).

Defendant was not deprived of her due process rights because she was not entitled to unlimited time to present her arguments and purported evidence. The record shows defendant was served with a notice defining the issues to be argued and considered at the hearing. Moreover, defendant is the one who filed the application, which was the subject of the June 25, 2025 proceeding. As such, she was fully aware of the issues to be adjudicated.

It is clear to us that the parties both had ample opportunity to "prepare and respond." <u>McKeown-Brand v. Trump Castle Hotel & Casino</u>, 132 N.J. 546, 559 (1993). Defendant testified about plaintiff's alleged violations of the prior orders and made her requests for relief and sanctions. We are convinced the "procedures which were employed were appropriate and adequate to protect the interests at stake." <u>Div. of Youth & Fam. Servs. v. M.Y.J.P.</u>, 360 N.J. Super.

11

426, 468 (App. Div. 2003) (holding there are no bright-line rules to judge the imposition of a particular procedure employed in a proceeding). There was no violation of defendant's Federal or State due process rights.

B.

Defendant next argues that the judge declined to take corrective action, make appropriate findings, or order sanctions against plaintiff for his violations of court orders. According to defendant, plaintiff has demonstrated a pattern of "willful disobedience," including missed parenting time, exchanges, unreturned phone calls, unanswered emails, ignored therapy directives, and interference with her parenting time. Because the judge "refused to remedy" plaintiff's noncompliance, defendant contends existing orders were not enforced, and she was denied procedural due process.

In support of her argument, defendant specified plaintiff did not only miss the June 17, 2025 "Father's Day" parenting time, but he also missed court ordered parenting time on three prior occasions—February 15 and 16, and April 29, 2025, constituting interference with custody under N.J.S.A. 2C:13-4(a)(1).[3]

---

[3] N.J.S.A. 2C:13-4(a)(1) provides:

> A person, including a parent, guardian, or other lawful custodian, is guilty of interference with custody if he

Defendant challenges the judge's ruling required her to use a disconnected phone number for parenting time communication with H.B. At the hearing, the judge's staff dialed plaintiff's phone number on the record and received the following message: "The person you have dialed is not receiving calls at this time."

Defendant claims plaintiff admitted the phone bill had not been paid, and the number was inactive for at least "two months." Defendant maintains there has been no phone contact with H.B. as a consequence, and this constitutes interference with custody under N.J.S.A. 2C:13-4. Defendant also contends plaintiff repeatedly misused police involvement and court filings to "mislead" the judge and "obstruct custody," which constitutes harassment under N.J.S.A. 2C:33-4(c),[4] and false reporting under N.J.S.A. 2C:28-4(b).[5]

---

> [or she]: (1) [t]akes or detains a minor child with the purpose of concealing the minor child and thereby depriving the child's other parent of custody or parenting time with the minor child[.]

[4] N.J.S.A. 2C:33-4(c) provides:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he [or she] . . . [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[5] N.J.S.A. 2C:28-4(b) provides:

Rule 1:10-3 permits a party to submit a motion requesting to enforce a litigant's rights:

> Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action. A judge shall not be disqualified because he or she signed the order sought to be enforced . . . In family actions, the [judge] may also grant additional remedies as provided by R[ule] 5:3-7.
>
> [R. 1:10-3.]

Rule 5:3-7(a) permits the imposition of remedies "[o]n finding that a party has violated an order respecting custody or parenting time." These additional remedies include:

> (1) compensatory time with the children; (2) economic sanctions, including but not limited to the award of monetary compensation for the costs resulting from a parent's failure to appear for scheduled parenting time or visitation such as child care expenses incurred by the other parent; . . . (6) temporary or permanent modification of the custodial arrangement provided such relief is in the best interest of the children; . . . (9)

A person commits a crime of the fourth degree if he:

(1) reports or causes to be reported to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or (2) pretends to furnish or causes to be furnished such authorities with information relating to an offense or incident when he [or she] knows he [or she] has no information relating to such offense or incident.

14

issuance of a warrant to be executed upon the further violation of the judgment or order; and (10) any other appropriate equitable remedy.

A motion to enforce litigant's rights addresses a court's "inherent right to invoke coercive measures designed to compel a recalcitrant party to comply with a court order[.]" S.S. v. E.S., 243 N.J. Super. 1, 8 (App. Div. 1990). "A proceeding to enforce litigant's rights 'is essentially a civil proceeding to coerce the defendant into compliance with the [judge's] order for the benefit of the private litigant.'" Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 392 (1995) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). It "provide[s] a mechanism, coercive in nature, to afford relief to a litigant who has not received what a [c]ourt [o]rder or [j]udgment entitles that litigant to receive." D'Atria v. D'Atria, 242 N.J. Super. 392, 407 (Ch. Div. 1990). See Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997) ("Relief under R[ule] 1:10-3, . . . [such as] the imposition of . . . a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order.").

However, "the particular manner in which compliance may be sought is left to the judge's sound discretion." Bd. of Educ., Twp. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Sup. Ct. 2001). See

N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17-18 (2015)) ("Rule 1:10-3 . . . allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'"); Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 463 (App. Div. 2023) ("[T]he court has discretion and flexibility in fashioning an appropriate remedy to compel compliance.").

Imposition of a monetary sanction under Rule 1:10-3 requires a finding that non-compliance with the order was "unjustified and willful." P.T. v. M.S., 325 N.J. Super. 193, 207. (App. Div. 1999). See In re N.J.A.C. 5:96 & 5:97, 221 N.J. at 18 ("punitive or coercive relief under the Rule cannot be used against one who is not a willful violator of a judgment"); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2026) ("Before punitive or coercive relief can be afforded, the [judge] must be satisfied that the [party] had the capacity to comply with the order and was willfully contumacious."); see e.g., Schochet v. Schochet, 435 N.J. Super. 542, 548 (App. Div. 2014) (the judge must "determine whether [failure to comply with the order] was excusable or willful, i.e., the obligor was able to pay and did not.").

A-3824-24

However, "[w]hen the relief sought is the enforcement of an order, and not punitive or coercive relief, there is no 'willfulness' requirement." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2026). However, "[t]he scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott v. Burke, 206 N.J. 332, 371 (2011). "A trial judge, when awarding relief to litigant's rights is 'obliged to balance the interests of the party for whose benefit the order issued against those of the party-obligor, without losing sight of the legal system's interest in the integrity of judicial orders.'" Innes v. Carrascosa, 391 N.J. Super. 453, 498-99 (App. Div. 2007) (quoting Anyanwu v. Anyanwu, 333 N.J. Super. 345, 351-52 (App. Div. 2000)).

Contrary to defendant's assertions, during the June 25, 2025 hearing, the judge did enforce the March 28, 2024 order regarding parenting time both on the record and in a written opinion, notwithstanding the fact defendant did not file an application to enforce litigant's rights under Rule 1:10-3. Indeed, defendant prevailed because the judge enforced her Sunday parenting time and her Wednesday phone calls with H.B. The judge addressed defendant's concerns by stating in his order the following:

> Defendant mother will call the minor child for her 7:30 p.[m.] Wednesday(s) phone calls at (609) ***-****. If

the minor child does not answer the phone on Wednesday[s] sanction[s] will be issued against . . . [p]laintiff father. The Wednesday's phone call and the Sunday parenting time orders are enforced.

The judge initially stated these findings on the record, after inquiring into the phone number being used for defendant's Wednesday phone calls with H.B., and ensured such number was active and able to be used—even having his court staff call the number during a brief adjournment. The judge ordered plaintiff to make certain the phone bill was paid and the number was active, directing, "I'm doing an order enforcing it," and "[n]ow that we've enforced the order."

It is clear to us the judge did not abuse his discretion in denying imposition of monetary sanctions against plaintiff for the June 17, 2025 Father's Day parenting time defendant missed. The record reveals there was a prior order issued by the Pennsylvania court on July 19, 2023, stating, "[F]ather's [D]ay [is] always with father," which may have caused confusion. Moreover, there is no indication in the record demonstrating the holiday schedule was ever modified by a court order.

We find no cause to intervene in the judge's findings. Given it was Father's Day in the face of an active prior court order granting plaintiff parenting time on that holiday, his ostensible noncompliance was "justified" and

"excusable" and denial of an award of monetary sanctions was not an abuse of discretion. P.T., 327 N.J. Super. at 207; Schochet, 435 N.J. Super. at 548.

C.

Defendant contends reversal is warranted because the judge erroneously maintained the status quo by ordering plaintiff to continue as the PPR and for her to continue as the PAR. She also argues that certain issues raised in her application did not pertain to enforcement of prior orders relating to parenting time but rather address child custody issues regarding H.B. In particular, defendant maintains she raised issues regarding H.B.'s "undiagnosed scoliosis," leg curvature, need for braces, birth injuries, lack of occupational therapy, as well as her "poor grades," and lack of therapy. Defendant asserts her constitutional protections under Troxel v. Granville, 530 U.S. 57 (2000) were violated because the judge imposed restrictions on her relationship with H.B. despite no court or agency ever finding defendant was "unfit, neglectful, or harmful towards her daughter."

A decision concerning custody and parenting time rests in "the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995). "We defer to the trial judge whether a plenary hearing must be scheduled." Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012). In "reviewing

19

decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby, 427 N.J. Super. at 116).

"[I]n custody cases, it is well settled that the court's primary consideration is the best interests of the child[]." A.J. v. R.J., 461 N.J. Super. 173, 181 (App. Div. 2019) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "Where there is already a judgment or an agreement affecting custody in place, it is presumed it 'embodies a best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the child[].'" A.J., 461 N.J. Super. at 182 (first alteration in original) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)). To determine whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current order was entered. See Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990); see also Donnelly v. Donnelly, 405 N.J. Super. 117, 127-29 (App. Div. 2009).

In accordance with N.J.S.A. 9:2-2, trial courts are required to find "a showing of 'cause' before a court will authorize the permanent removal of a child to another state without the consent of both parents or, if the child is of 'suitable age' to decide, the consent of the child." Bisbing, 230 N.J. at 323. The Supreme Court in Bisbing recognized "the 'growing trend in the law easing restrictions on the custodial parent's right to relocate with the child[] and recognizing the identity of interest of the custodial parent and child.'" Id. at 326 (quoting Baures v. Lewis, 167 N.J. 91, 109 (2001)). A court "should conduct a best interests analysis to determine 'cause' under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody—whether the custody arrangement designates a [PPR] and a [PAR], or provides for equally shared custody." Id. at 335.

Here, the judge aptly pointed out that defendant failed to argue the standard mandated by Bisbing and failed to establish a "material" change in circumstances. We see no constitutional infirmity. The judge properly found defendant failed to articulate such relief in her application and determined it was in H.B.'s best interests to remain with plaintiff. The record supports that determination.

21

D.

Finally, we address defendant's argument that the judge violated her right to the free exercise of religion under the First Amendment to the United States Constitution and Article I, Paragraph III of the New Jersey Constitution and disregarded her observance of Shabbos. Defendant contends her right to practice religion freely "without government interference or coercion" was violated. In support of her argument, defendant asserts she advised the judge that she was "incredibly uncomfortable driving on Saturdays because it is Shabbos," but he provided no response and declined to "accommodate" her religious observance. Defendant argues the judge required her to choose between "adherence to her faith and the opportunity to see her child" and was "penalized" for adhering to her faith.

Defendant cites Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993) for the proposition, "[g]overnment action that effectively forces a person to choose between the free exercise of religion and participation in a protected family relationship constitutes an unconstitutional burden." However, defendant's reliance on City of Hialeah is misguided, because the standard applies only to an action taken by the government—usually

22

imposition of a law—that interferes with an individual's religious practice, which is not the case here.

The judge correctly attempted to provide defendant with an alternative, i.e., Monday visits for make-up parenting time, which defendant rejected. Moreover, plaintiff testified at the hearing that he has "been doing all of the transportation to and from, tolls to and from, gas to and from," even though "[defendant] lives five minutes away." Therefore, we give no credence to defendant's argument.

Those arguments we have not specifically addressed lacked sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division